# JEANSONNE & REMONDET

A LIMITED LIABILITY COMPANY

## ATTORNEYS AT LAW

**MICHAEL J. REMONDET, JR.**
Licensed in Louisiana and Texas
miker@jeanrem.com

ONE CANAL PLACE
365 CANAL STREET, SUITE 1660
**NEW ORLEANS, LOUISIANA  70130**
PHONE (504) 524-7333
FAX (504) 524-3339

200 WEST CONGRESS STREET, SUITE 1100
POST OFFICE BOX 91530
**LAFAYETTE, LOUISIANA  70509-1530**
PHONE (337) 237-4370
FAX (337) 235-2011
www.jeanrem.com

### *Please Reply to Lafayette Office*

May 4, 2022

**<u>Via Email Only</u>**
brian@getgordon.com
Mr. Brian C. Colomb
Gordon McKernan Injury Attorneys
2505 Verot School Rd.
Lafayette, LA 70508

> Re:   Felton Broussard v. Hillside Logistics, et al
>        Docket No. C-2021-5338-D

Dear Brian:

Enclosed please find Initial Disclosures on behalf of Hillside Logistics Company, LLC.

With kindest regards and best wishes, I remain,

Sincerely,

MICHAEL J. REMONDET, JR.

MJR/MG/cjp
Enclosures
5/19/22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

FELTON BROUSSARD                             *      CIVIL ACTION

                                            *      NO. 6:22-CV-00461

VERSUS

                                            *      JUDGE ROBERT R SUMMERHAYS

HILLSIDE LOGISTICS COMPANY, LLC, ET AL.   *   MAG JUDGE PATRICK J. HANNA

INITIAL DISCLOSURES

NOW INTO COURT, through undersigned counsel, comes and appears HILLSIDE

LOGISTICS COMPANY, LLC., who discloses their initial disclosures in this matter.

1.      **Defendant's list of persons likely to have discoverable information:**

        1.    Nicholas A. Berry
              7413 Fox Creek Dr.
              Olive Branch, MS 38654

        2.    Felton Broussard, Jr.
              202 Brockton Dr.
              Carencro, LA 70520

        3.    Bernard Anderson
              Lafayette City Police
              900 E. University Ave.
              Lafayette, LA 70503

        4.    Eric Kiarie
              Hillside Logistics Company
              2303 Hillside Lane, Ste. 104
              Carrollton, TX 75006

        5.    Faith Ayako
              8621 San Joaquin Trl
              Fort Worth, TX 76118

        6.    Dr. Lon Baronne
              108 Rue Louis XIV
              Lafayette, LA 70508

7. Dr. Michael S. Haydel
   1022 Belanger St.
   Houma, LA 70360

8. Dr. Thomas Bertuccini or another IME physician
   601 W. St Mary Blvd. # 306
   Lafayette, LA 70506

9. Any and all experts designated by Defendants;

10. Any and all witnesses discovered prior to trial.

2. **Defendant herein may introduce and use the following documents to support their case in this matter:**

   1. Uniform Motor Vehicle Traffic Crash Report dated October 20, 2020

   2. Photographs of the vehicles involved in the accident

   3. Hillside Logistic Co., LLC Lease

   4. Hillside Logistic Co., LLC Lease Termination in effect May 1, 2020

   5. Any and all of Plaintiff's medical records.

3. **Computation of damages suffered:**

   Not applicable to Defendants.

4. **All insurance policies that may be applicable:**

   See attached Hallmark Policy No. A42520472.

Respectfully submitted:

JEANSONNE & REMONDET

_/s/ Michael J. Remondet, Jr._

**MICHAEL J. REMONDET, JR. #21046**
**JULIETTE B. WADE #26830**
**MICHAEL R. GUIDRY #36194**
PO Box 91530
Lafayette, LA 70509
miker@jeanrem.com; jillw@jeanrem.com;
mguidry@jeanrem.com
(337) 237-4370
**ATTORNEYS FOR DEFENDANT**

## <u>CERTIFICATE</u>

I HEREBY CERTIFY that a copy of the above and foregoing Pleading was this day forwarded

to all counsel of record by email.

Mr. Brian C. Colomb
Gordon McKernan Injury Attorneys
brian@getgordon.com

Lafayette, Louisiana, this 4th day of May 2022.

/s/  *Michael J. Remondet, Jr.*
**MICHAEL J. REMONDET, JR.**

**STATE OF LOUISIANA**
**UNIFORM MOTOR VEHICLE TRAFFIC CRASH REPORT**

TOTAL NUMBER OF VEHICLES INVOLVED: **2**

| DATE OF CRASH | TIME (0000) | DISTRICT/ZONE | TROOP | | PAGE # |
|---|---|---|---|---|---|
| 1 0 2 0 2 0 2 0 | 1 3 3 8 | 0 4 / 0 1 | LAT. 3 0 . 2 1 7 2 5° | | 0 1 |
| | | | LONG. 9 2 . 0 0 5 2 2° | | |

PARISH: L A F A Y E T T E   PARISH CODE: 2 8

| Quadrant | | Service Road | |
|---|---|---|---|
| NW | SW | N | E |
| NE | SE | S | W |

CITY OR TOWN: L A F A Y E T T E   CITY CODE: 4

2 0 - 0 0 3 7 0 6 6 9

CRASH OCCURRED ON
A. INTERSTATE
B. U.S. HWY
C. STATE HWY
D. PARISH ROAD
E. CITY STREET
F. OFF ROAD/ PRIVATE PROPERTY
G. TOLL ROAD **B**

HIGHWAY #: 9 0 – MILEPOST: 1 0 8 . 8   ROADWAY NAME: 5 5 1 E PINHOOK RD

DISTANCE: 1 1 5   MILES / FEET: X   N E / S W   W   STREET/HIGHWAY: ☒ AT INTERSECTION ☐ NOT AT INTERSECTION   1 3 5 1 SE EVANGELIN

DISTANCE: 4 3 0   MILES / FEET: X   N E / S W   W   STREET/HIGHWAY: ☐ AT INTERSECTION ☒ NOT AT INTERSECTION   E VERMILION ST

WORK ZONE
HIT & RUN
PUBLIC PROPERTY DAMAGE
PHOTOS MADE
RR TRAIN INVOLVED
FATALITY
PED
INJURY

---

**CONTRIBUTING FACTORS AND CONDITIONS**
WRITE APPROPRIATE LETTER IN BLOCK

**ROAD SURFACE**
(ONE PER COLUMN)   **A**   **A**

A. DRY
B. WET
C. SNOW/SLUSH
D. ICE
E. CONTAMINANT (SAND, MUD, DIRT, OIL, ETC.)
Y. UNKNOWN
Z. OTHER ...............

A. CONCRETE
B. BLACK TOP
C. BRICK
D. GRAVEL
E. DIRT
Y. UNKNOWN
Z. OTHER

**ROADWAY CONDITIONS**   **A**

A. NO ABNORMALITIES
B. SHOULDER ABNORMALITY
C. HOLES
D. DEEP RUTS
E. BUMPS
F. LOOSE SURFACE MATERIAL
G. CONSTRUCTION, REPAIR
H. OVERHEAD CLEARANCE LIMITED
I. CONSTRUCTION - NO WARNING
J. PREVIOUS CRASH
K. WATER ON ROADWAY
L. ANIMAL IN ROADWAY
M. OBJECT IN ROADWAY
Z. OTHER ...............

**TYPE OF ROADWAY**   **B**

A. ONE-WAY ROAD
B. TWO-WAY ROAD WITH NO PHYSICAL SEPARATION
C. TWO-WAY ROAD WITH A PHYSICAL SEPARATION
D. TWO-WAY ROAD WITH A PHYSICAL BARRIER
Y. UNKNOWN
Z. OTHER ...............

**ALIGNMENT**   **B**

A. STRAIGHT-LEVEL
B. STRAIGHT-LEVEL ELEVATED
C. CURVE-LEVEL
D. CURVE-LEVEL ELEVATED
E. ON GRADE-STRAIGHT
F. ON GRADE-CURVE
G. HILLCREST-STRAIGHT
H. HILLCREST-CURVE
I. DIP, HUMP-STRAIGHT
J. DIP, HUMP-CURVE
Y. UNKNOWN
Z. OTHER ...............

**PRIMARY FACTOR**   **A**

**SECONDARY FACTOR**   **B**

A. VIOLATIONS
B. MOVEMENT PRIOR TO CRASH
C. VISION OBSCUREMENTS
D. CONDITION OF DRIVER
E. VEHICLE CONDITIONS
F. ROAD SURFACE
G. ROADWAY CONDITION
H. LIGHTING
I. WEATHER
J. TRAFFIC CONTROL
K. KIND OF LOCATION
L. CONDITION OF PEDESTRIAN
M. PEDESTRIAN ACTIONS

**WEATHER**   **A**

A. CLEAR
B. CLOUDY
C. RAIN
D. FOG/SMOKE
E. SLEET/HAIL
F. SNOW
G. SEVERE CROSSWIND
H. BLOWING SAND, SOIL, DIRT, SNOW
Y. UNKNOWN
Z. OTHER ...............

**KIND OF LOCATION**   **B**

A. MANUFACTURING OR INDUSTRIAL
B. BUSINESS CONTINUOUS
C. BUSINESS, MIXED RESIDENTIAL
D. RESIDENTIAL DISTRICT
E. RESIDENTIAL SCATTERED
F. SCHOOL OR PLAYGROUND
G. OPEN COUNTRY
Z. OTHER ...............

**RELATION TO ROADWAY**   **A**

A. ON ROADWAY
B. SHOULDER
C. MEDIAN
D. BEYOND SHOULDER - LEFT
E. BEYOND SHOULDER - RIGHT
F. BEYOND RIGHT OF WAY
G. GORE
Y. UNKNOWN
Z. OTHER ...............

**ACCESS CONTROL**   **A**

A. NO CONTROL (UNLIMITED ACCESS TO ROADWAY)
B. PARTIAL CONTROL LIMITED ACCESS TO ROADWAY
C. FULL CONTROL (ONLY RAMP ENTRANCE & EXIT)
Y. UNKNOWN
Z. OTHER ...............

**LIGHTING**   **A**

A. DAYLIGHT
B. DARK - NO STREET LIGHTS
C. DARK - CONTINUOUS STREET LIGHT
D. DARK - STREET LIGHT AT INTERSECTION ONLY
E. DUSK
F. DAWN
Y. UNKNOWN
Z. OTHER ...............

---

**VEHICLE CONFIGURATION**

| A PASSENGER CAR | D A, B, C, OR S WITH TRAILER | G OFF-ROAD VEHICLE | J BUS W/SEATS FOR 9-15 OCCUPANTS | Q SINGLE UNIT TRUCK W/ 3 AXLES OR MORE | T TRACTOR SEMI-TRAILER | W FARM EQUIPMENT |
|---|---|---|---|---|---|---|
| B LT. TRUCK (P.U., ETC.) | E MOTORCYCLE | H EMERGENCY VEHICLE IN USE | K BUS W/SEATS FOR 16 OR MORE OCC. | N TRUCK/ TRAILER | R TRUCK DOUBLE | V MOTOR HOME |
| C VAN | F PEDALCYCLE | I SCHOOL BUS | L SINGLE UNIT TRUCK W/ 2 AXLES | P TRUCK/ TRACTOR | S SUV | Z OTHER |

**CARGO BODY TYPE**

| A BUS | D FLATBED | G AUTO TRANSPORTER | J HOPPER |
|---|---|---|---|
| B VAN/ENCLOSED BOX | E DUMP TRUCK/ TRAILER | H LOG TRUCK/ TRAILER | K POLE TRAILER |
| C CARGO TANK | F CONCRETE MIXER | I GARBAGE/ REFUSE | X NO CARGO BODY / Z OTHER |

---

**EMERGENCY SERVICES**

| | TIME CALLED | ARRIVED SCENE | DEPARTED SCENE | ARRIVED HOSPITAL | | TIME CALLED | ARRIVED SCENE |
|---|---|---|---|---|---|---|---|
| AMBULANCE | | | | | RESCUE UNIT | | |

AMBULANCE SERVICE: _____

FIRE DEPARTMENT: _____

---

| INVESTIGATING AGENCY | NAME OF AGENCY: LAFAYETTE CITY POLICE | TIME OF NOTIFICATION: 1 3 3 3 | TIME OF ARRIVAL: 1 4 2 8 | TIME ALL LANES OPENED: 1 5 0 0 |
|---|---|---|---|---|

| INVESTIGATION COMPLETE | Y/N: X | INVESTIGATING POLICE AGENCY: B   A. STATE  B. CITY  C. PARISH  Z. OTHER | DATE REPORT COMPLETED: 1 0 2 0 2 0 2 0 |
|---|---|---|---|

ANDERSON, BERNARD
INVESTIGATING OFFICER'S NAME (PRINT)   SIGNATURE   BADGE #: 1 3 9 3 1   SUPERVISOR'S INITIALS OR BADGE #

20-1-02314-12-11785

COMPUTER NUMBER

PAGE # 02

**STATE OF LOUISIANA**
**UNIFORM MOTOR VEHICLE TRAFFIC CRASH REPORT**
**VEHICLE/PEDESTRIAN**

20-00370669

| 1 VEH # | OR | PEDESTRIAN |

| CONF Q | CARGO BODY TYPE J *see page 1 for selections* | YEAR 2012 | MAKE MACK | MODEL TT | # DOORS 2 | # AXLES 5 | # TIRES 18 |

**V.I.N.** 1M1AW07YXCM024219   VEHICLE TOWED **B** A.YES B. NO C. LEFT AT SCENE   REMOVED BY DRIVER

| LICENSE PLATE | YEAR 2021 | STATE TX | NUMBER R477261 | TYPE BUS | GVWR/GCWR 80000 | REASON TOWED A. VEHICLE DAMAGE B. DRIVER ARRESTED C. INSURANCE VIOLATION Z. OTHER |

| TRAILER DESCRIPTION | YEAR 2021 | MAKE HOPPER | TYPE BUS | LICENSE PLATE | YEAR 2021 | STATE TN | NUMBER U704497 |

| VEHICLE CLASSIFICATION | COMMERCIAL/ BUSINESS VEHICLE X | GOVERNMENT VEHICLE | PERSONAL VEHICLE |

**COMPLETE INFORMATION BELOW IF THIS VEHICLE IS BEING USED FOR COMMERCE/BUSINESS, & HAS A GVWR/GCWR IN EXCESS OF 10,000 LBS., OR HAS A HAZMAT PLACARD, OR IS A BUS WITH SEATING FOR NINE OR MORE INCLUDING THE DRIVER.**   US DOT # 3121074

CARRIER NAME HILLSIDE LOGISTICS   MC/MX ("ICC") #

STREET ADDRESS: PO BOX 610081   CITY DALLAS   STATE TX   ZIP 75006

INTERSTATE CARRIER Y/N X   TRANSPORTING HAZARDOUS MATERIAL Y/N   CLASS .   ID#   PLACARDS DISPLAYED Y/N   HAZ MAT RELEASED Y/N

**NAME** (LAST, FIRST, MI) OF **X** DRIVER □ PEDESTRIAN   BERRY, NICHOLAS, A

DATE OF BIRTH 09231976

STREET ADDRESS 7413 FOX CREEK DRIVE   TELEPHONE # 972-366-1021

CITY OLIVE BRANCH   STATE MS   ZIP 38654

| POSI-TION A | EJEC-TION A | TRAP/EXTRI-CATED A | AIR BAG B | OCC PROT SYS D | SEX M | RACE B | AGE 44 | INJURY E |

| STATE MS | CLASS A | ENDORSEMENTS N | DRIVER'S LICENSE NUMBER 801384362 | | | INSTRUCTED TO EXCHANGE INFORMATION? Y/N X | NAME OF FACILITY | TRANSPORTED TO MEDICAL FACILITY A. YES C. REFUSED AID B. NO Y. UNKNOWN **B** |

| PEDESTRIAN ONLY | UPPER BODY CLOTHING LIGHT □ DARK □ | LOWER BODY CLOTHING LIGHT □ DARK □ | SEX | RACE | AGE | INJURY CODE |

**OWNER'S NAME** (LAST, FIRST, MI OR COMPANY NAME)   **X** Same as Driver   BERRY, NICHOLAS, A   TELEPHONE # 972-366-1021

STREET ADDRESS 7413 FOX CREEK DRIVE

CITY OLIVE BRANCH   STATE MS   ZIP 38654

**INSURANCE CO.** NAME HALLMARK SPECIALTY INS   POLICY NUMBER IMPE557399800   EXPIRATION DATE 02042021

(NOT AGENCY NAME)

AGENT'S NAME/ADDRESS OMAR SEBITA   PHONE # 972-366-1021

| CODES | | | | | |
|---|---|---|---|---|---|
| **SEATING POSITION** | **EJECTION** | **TRAPPED OR EXTRICATED** | **AIRBAG** | **OCCUPANT PROTECTION SYSTEM USED** | **INJURY** |
| A - FRONT SEAT-LEFT SIDE (MOTORCYCLE DRIVER) B - FRONT SEAT-MIDDLE C - FRONT SEAT-RIGHT SIDE D - SECOND SEAT-LEFT SIDE (MOTORCYCLE PASSENGER) E - SECOND SEAT-MIDDLE F - SECOND SEAT-RIGHT SIDE G - THIRD ROW-LEFT SIDE (MOTORCYCLE PASSENGER) H - THIRD ROW-MIDDLE I - THIRD ROW-RIGHT SIDE | J - SLEEPER SECTION OF CAB (TRUCK) K - PASSENGER IN OTHER ENCLOSED PASSENGER OR CARGO AREA (NON-TRAILING UNIT) L - PASSENGER IN OTHER UNENCLOSED PASSENGER OR CARGO AREA (NON-TRAILING UNIT) M - PASSENGER ON TRAIN OR STREETCAR N - TRAILING UNIT O - RIDING ON VEHICLE EXTERIOR (NON-TRAILING UNIT) Y - UNKNOWN | A - NOT EJECTED B - TOTALLY EJECTED C - PARTIALLY EJECTED Y - UNKNOWN | A - NOT TRAPPED B - TRAPPED/EXTRI-CATED C - TRAPPED/NOT EXTRICATED Y - UNKNOWN | A - DEPLOYED B - NON DEPLOYED C - NON-DEPLOY-ED/SWITCH OFF D - NOT APPLICABLE Y - UNKNOWN | A - NONE USED-VEHICLE OCCUPANT B - SHOULDER BELT ONLY USED C - LAP BELT ONLY USED D - SHOULDER AND LAP BELT USED E - CHILD SAFETY SEAT IMPROPERLY USED F - CHILD SAFETY SEAT USED G - HELMET USED Y - RESTRAINT USE UNKNOWN | A - FATAL B - INCAPACITA-TING/SEVERE C - NON-INCAPA-CITATING/ MODERATE D - POSSIBLE/ COMPLAINT E - NO INJURY |

20100231141211765

PAGE #

**0 3**

WRITE APPROPRIATE LETTER IN BLOCK

# CONTRIBUTING FACTORS AND CONDITIONS

20 - 00370669

## VISION OBSCURENCES   [N]

A. RAIN, SNOW, ETC. ON WINDSHIELD
B. WINDSHIELD OTHERWISE OBSCURED
C. VISION OBSCURED BY LOAD
D. TREES, BUSHES, ETC.
E. BUILDING
F. EMBANKMENT
G. SIGN BOARDS
H. HILLCREST
I. PARKED VEHICLES
J. MOVING VEHICLES
K. BLINDED BY HEADLIGHTS
L. BLINDED BY SUNGLARE
M. DISTRACTED BY NEON LIGHTS IN FIELD OF VIEW
N. NO OBSCUREMENTS
Y. UNKNOWN
Z. OTHER ........................................

## VIOLATION   [S]

A. EXCEEDING STATED SPEED LIMIT
B. EXCEEDING SAFE SPEED LIMIT
C. FAILURE TO YIELD
D. FOLLOWING TOO CLOSELY
E. DRIVING LEFT OF CENTER
F. CUTTING IN, IMPROPER PASSING
G. FAILURE TO SIGNAL
H. MADE WIDE RIGHT TURN
I. CUT CORNER ON LEFT TURN
J. TURNED FROM WRONG LANE
K. OTHER IMPROPER TURNING
L. DISREGARDED TRAFFIC CONTROL
M. IMPROPER STARTING
N. IMPROPER PARKING
O. FAILED TO SET OUT FLAGS, FLARES
Q. VEHICLE CONDITION
R. DRIVER CONDITION
S. CARELESS OPERATION
T. IMPROPER BACKING
U. NO VIOLATIONS
Y. UNKNOWN
Z. OTHER ........................................

## TRAFFIC CONTROL   [R]

A. STOP SIGN
B. YIELD SIGN
C. RED SIGNAL ON
D. YELLOW SIGNAL ON
E. GREEN SIGNAL ON
F. GREEN TURN ARROW ON
G. RIGHT TURN ON RED
H. LIGHT PHASE UNKNOWN
I. FLASHING YELLOW
J. FLASHING RED
K. OFFICER, FLAGMAN
L. RR CROSSING, SIGN
M. RR CROSSING,SIGNAL
N. RR CROSSING, NO CONTROL
O. WARNING SIGN (SCHOOL, ETC.)
P. SCHOOL FLASHING SPEED SIGN
Q. YELLOW NO PASSING LINE
R. WHITE DASHED LINE
S. YELLOW DASHED LINE
T. BIKE LANE
U. CROSSWALK
V. NO CONTROL
Y. UNKNOWN
Z. OTHER ........................................

## CONDITION OF DRIVER/PED   [A]

A. NORMAL
B. INATTENTIVE
C. DISTRACTED
D. ILLNESS
E. FATIGUED
F. APPARENTLY ASLEEP/BLACKOUT
G. DRINKING ALCOHOL - IMPAIRED
H. DRINKING ALCOHOL - NOT IMPAIRED
I. DRUG USE - IMPAIRED
J. DRUG USE - NOT IMPAIRED
K. PHYSICAL IMPAIRMENT (EYES, EAR, LIMB)
Y. UNKNOWN
Z. OTHER ........................................

## DRIVER DISTRACTION   [E]

A. CELL PHONE
B. OTHER ELECTRONIC DEVICE (PAGER, PALM PILOT, NAVIGATION DEVICE, ETC.)
C. OTHER INSIDE THE VEHICLE
D. OTHER OUTSIDE THE VEHICLE
E. NOT DISTRACTED
Y. UNKNOWN

## REASON FOR MOVEMENT   [P]

A. TO AVOID OTHER VEHICLE
B. TO AVOID PEDESTRIAN
C. TO AVOID ANIMAL
D. TO AVOID OTHER OBJECT
E. PASSING
F. VEHICLE OUT OF CONTROL, NOT PASSING
G. VEHICLE OUT OF CONTROL, PASSING
H. FOR TRAFFIC CONTROL
I. DUE TO CONGESTION
J. DUE TO PRIOR CRASH (COLLISION)
K. DUE TO DRIVER CONDITION
L. DUE TO DRIVER VIOLATION
M. DUE TO VEHICLE CONDITION (FAILURE)
N. DUE TO PAVEMENT CONDITION
O. HIGH WIND
Y. NORMAL MOVEMENT
Z. OTHER ........................................

## PEDESTRIAN ACTIONS   [ ]

A. CROSSING, ENTERING ROAD AT INTERSECTION
B. CROSSING, ENTERING ROAD NOT AT INTERSECTION
C. WALKING IN ROAD – WITH TRAFFIC
D. WALKING IN ROAD – AGAINST TRAFFIC
E. SLEEPING IN ROADWAY
F. STANDING IN ROADWAY
G. GETTING ON OR OFF OTHER VEHICLE
H. PUSHING, WORKING ON VEHICLE IN ROAD
I. OTHER WORKING IN ROADWAY
J. PLAYING IN ROADWAY
K. NOT IN ROADWAY
Y. UNKNOWN
Z. OTHER

## NON COLLISION

A. OVERTURN/ROLLOVER
B. FIRE/EXPLOSION
C. IMMERSION
D. JACKKNIFE
E. CARGO/EQUIPMENT LOSS OR SHIFT
F. FELL/JUMPED FROM MOTOR VEHICLE
G. THROWN OR FALLING OBJECT
H. EQUIPMENT FAILURE (BLOWN TIRE, BRAKE FAILURE, ETC.)
I. SEPARATION OF UNITS IN TRANSPORT
J. RAN OFF ROAD RIGHT
K. RAN OFF ROAD LEFT
L. CROSSED MEDIAN/CENTERLINE
M. DOWNHILL RUNAWAY
N. OTHER NON-COLLISION

## COLLISION WITH PERSON, MOTOR VEHICLE, OR NON- FIXED OBJECT

O. PEDESTRIAN
P. PEDALCYCLE
Q. RAILWAY VEHICLE (TRAIN, ENGINE)
R. ANIMAL

S. MOTOR VEHICLE IN TRANSPORT
T. PARKED MOTOR VEHICLE
U. STRUCK BY FALLING, SHIFTING CARGO OR ANYTHING SET IN MOTION BY MOTOR VEHICLE
V. WORK ZONE/MAINTENANCE EQUIPMENT
W. OTHER NON-FIXED OBJECT

## COLLISION WITH FIXED OBJECT

X. IMPACT ATTENUATOR/CRASH CUSHION
Y. BRIDGE OVERHEAD STRUCTURE
Z. BRIDGE PIER OR SUPPORT
AA. BRIDGE RAIL
BB. CULVERT
CC. CURB
DD. DITCH
EE. EMBANKMENT
FF. GUARDRAIL FACE
GG. GUARDRAIL END
HH. CONCRETE TRAFFIC SUPPORT
II. OTHER TRAFFIC BARRIER
JJ. TREE (STANDING)
KK. UTILITY POLE/LIGHT SUPPORT

### SEQUENCE OF EVENTS/HARMFUL EVENTS

LL. TRAFFIC SIGN SUPPORT
MM. TRAFFIC SIGNAL SUPPORT
NN. OTHER POST, POLE, OR SUPPORT
OO. FENCE
PP. MAILBOX
QQ. OTHER FIXED OBJECT (WALL, BUILDING, TUNNEL, ETC.)
YY. UNKNOWN

1st  [S]

2nd

3rd

4th

MOST HARMFUL EVENT   [S]

## MOVEMENT PRIOR TO CRASH   [M]

A. STOPPED
B. PROCEEDING STRAIGHT AHEAD
C. TRAVELING WRONG WAY
D. BACKING
E. CROSSED MEDIAN INTO OPPOSING LANE
F. CROSSED CENTER LINE INTO OPPOSING LANE
G. RAN OFF ROAD (NOT WHILE MAKING TURN AT INTERSECTION)
H. CHANGING LANES ON MULTI-LANE ROAD
I. MAKING LEFT TURN
J. MAKING RIGHT TURN

K. STOPPED PREPARING TO, OR MAKING U-TURN
L. MAKING TURN, DIRECTION UNKNOWN
M. STOPPED, PREPARING TO TURN LEFT
N. STOPPED, PREPARING TO TURN RIGHT
O. SLOWING TO MAKE LEFT TURN
P. SLOWING TO MAKE RIGHT TURN
Q. SLOWING TO STOP
R. PROPERLY PARKED
S. PARKING MANEUVER

T. ENTERING TRAFFIC FROM SHOULDER
U. ENTERING TRAFFIC FROM MEDIAN
V. ENTERING TRAFFIC FROM PARKING LANE
W. ENTERING TRAFFIC FROM PRIVATE LANE OR DRIVEWAY
X. ENTERING FREEWAY FROM ON RAMP
Y. LEAVING FREEWAY VIA OFF RAMP
Z. OTHER OR UNKNOWN

## VEHICLE CONDITION   [K]

A. DEFECTIVE BRAKES
B. DEFECTIVE HEADLIGHTS
C. DEFECTIVE REAR LIGHTS
D. DEFECTIVE SIGNAL LIGHTS
E. ALL LIGHTS OUT
F. DEFECTIVE STEERING
G. TIRE FAILURE
H. WORN OR SMOOTH TIRES
I. ENGINE FAILURE
J. DEFECTIVE SUSPENSION
K. NO DEFECTS OBSERVED
Y. OTHER .........................

## VEHICLE LIGHTING   [B]

A. HEADLIGHTS ON
B. HEADLIGHTS OFF
C. DAYTIME RUNNING LIGHTS
Y. UNKNOWN

## TRAFFIC CONTROL CONDITIONS   [A]

A. CONTROLS FUNCTIONING
B. CONTROLS NOT FUNCTIONING
C. CONTROLS OBSCURED
D. LANE MARKING UNCLEAR OR DEFECTIVE
E. NO CONTROLS
Y. UNKNOWN

## ALCOHOL/DRUG INVOLVEMENT

ALCOHOL/DRUGS SUSPECTED..........................   [A]
A. NEITHER ALCOHOL NOR DRUGS
B. YES-ALCOHOL
C. YES-DRUGS
D. YES-ALCOHOL AND DRUGS
Y. UNKNOWN

ALCOHOL ...........................................   [B]
A. TEST REFUSED
B. NO TEST GIVEN
C. TEST GIVEN, RESULTS PENDING
D. TEST GIVEN, BAC .................   [0]   g%

DRUGS ...........................................   [A]
A. TEST NOT GIVEN
B. TEST GIVEN, RESULTS PENDING
C. TEST REFUSED
D. DRUGS REPORTED (SPECIFY IN NARRATIVE)

AFFIX BLOOD ALCOHOL KIT LABEL HERE

(OR ENTER BLOOD ALCOHOL KIT NUMBER)

| DIRECTION BEFORE CRASH | FINAL LOCATION OF VEHICLES | DISTANCE TRAVELED AFTER IMPACT | SPEED | | SKIDMARK DATA (FEET) | | | |
|---|---|---|---|---|---|---|---|---|
| HEADED   ON HIGHWAY, STREET OR DRIVE | | | EST. | POSTED | FR | FL | RR | RL |
| [E] N E S W   PINHOOK RD | MOVED | UNK | UNK | 40 | 0 | 0 | 0 | 0 |

## DAMAGE TO VEHICLE

AREA DAMAGED   [H]

1ST

N- UNDER- CARRIAGE
O- TOTAL
P- OTHER
Q- NONE
Y- UNKNOWN

2ND

3RD

EXTENT OF DEFORMITY   [G]

1ST
A- NONE
B- VERY MINOR
C- MINOR
D- MINOR/MODERATE
E- MODERATE
F- MODERATE/SEVERE
G- SEVERE
H-VERY SEVERE
Y-UNKNOWN

2ND

3RD

| CITATION NO | VEH. | PED. | R.S. OR ORD. NO |
|---|---|---|---|
| 86-2:58 | [X] | ☐ | 711187 |
|  | ☐ | ☐ |  |
|  | ☐ | ☐ |  |
|  | ☐ | ☐ |  |
|  | ☐ | ☐ |  |

NOTICE OF INSURANCE VIOLATION ................. ☐

INVESTIGATING OFFICER'S INITIALS

20-100231412211765

**COMPUTER NUMBER**

**STATE OF LOUISIANA**
**UNIFORM MOTOR VEHICLE TRAFFIC CRASH REPORT**
**VEHICLE/PEDESTRIAN**

PAGE # **0 4**

**2** VEH #   OR   ☐ PEDESTRIAN

20 – 0 0 3 7 0 6 6 9

| CONF | CARGO BODY TYPE | YEAR | MAKE | MODEL | # DOORS | # AXLES | # TIRES |
|------|------|------|------|-------|---------|---------|---------|
| B | X see page 1 for selections | 2 0 0 8 | C H E V R O L E T | 1 5 0 0 | 2 | 2 | 4 |

**V.I.N.** 1 G C E C 1 9 C 1 8 Z 2 8 8 3 9 2

VEHICLE TOWED **B** A. YES  B. NO  C. LEFT AT SCENE

REMOVED BY D R I V E R

**LICENSE PLATE**  YEAR 2 0 2 1  STATE L A  NUMBER P P 2 1 2 4 8 6  TYPE G O V

GVWR/GCWR 0

REASON TOWED
A. VEHICLE DAMAGE
B. DRIVER ARRESTED
C. INSURANCE VIOLATION
Z. OTHER

**TRAILER DESCRIPTION**  YEAR  MAKE N O N E  TYPE  LICENSE PLATE  YEAR  STATE  NUMBER

**VEHICLE CLASSIFICATION**  COMMERCIAL/ BUSINESS VEHICLE  GOVERNMENT VEHICLE **X**  PERSONAL VEHICLE

**COMPLETE INFORMATION BELOW IF THIS VEHICLE IS BEING USED FOR COMMERCE/BUSINESS, & HAS A GVWR/GCWR IN EXCESS OF 10,000 LBS., OR HAS A HAZMAT PLACARD, OR IS A BUS WITH SEATING FOR NINE OR MORE INCLUDING THE DRIVER.**

US DOT # 5 1 2 2  2 4 1 6

CARRIER NAME L A F A Y E T T E   C O N S O L I D A T E D   G O V E R N M E N T

MC/MX ("ICC") #

STREET ADDRESS: 7 0 5   W   U N I V E R S I T Y   A V E N U E  CITY L A F A Y E T T E  STATE L A  ZIP 7 0 5 0 6

INTERSTATE CARRIER Y/N  TRANSPORTING HAZARDOUS MATERIAL Y/N  CLASS ▪  ID#  PLACARDS DISPLAYED Y/N  HAZ MAT RELEASED Y/N

**NAME** (LAST, FIRST, MI) OF **X** DRIVER  ☐ PEDESTRIAN

B R O U S S A R D   J R ,   F E L T O N ,   J

DATE OF BIRTH 0 9 2 8 1 9 8 0

STREET ADDRESS 2 0 2   B R O C K T O N   D R I V E  TELEPHONE # 3 3 7 – 2 9 1 – 8 2 0 0

CITY C A R E N C R O  STATE L A  ZIP 7 0 5 2 0

| POSITION | EJECTION | TRAP/ EXTRI-CATED | AIR BAG | OCC PROT SYS | SEX | RACE | AGE | INJURY |
|------|------|------|------|------|------|------|------|------|
| A | A | A | B | D | M | B | 4 0 | E |

STATE L A  CLASS D  ENDORSEMENTS  DRIVER'S LICENSE NUMBER 7 2 3 3 5 2 5

INSTRUCTED TO EXCHANGE INFORMATION? Y/N **X**

TRANSPORTED TO MEDICAL FACILITY
A. YES  C. REFUSED AID
B. NO  Y. UNKNOWN **B**

NAME OF FACILITY

**PEDESTRIAN ONLY**  UPPER BODY CLOTHING  LIGHT  DARK  LOWER BODY CLOTHING  LIGHT  DARK  SEX  RACE  AGE  INJURY CODE

**OWNER'S NAME** (LAST, FIRST, MI OR COMPANY NAME)  ☐ Same as Driver

L A F A Y E T T E   C O N S O L I D A T E D   G O V E R  TELEPHONE # 3 3 7 – 2 9 1 – 8 2 0 0

STREET ADDRESS 7 0 5   W   U N I V E R S I T Y   A V E N U E

CITY L A F A Y E T T E  STATE L A  ZIP 7 0 5 0 6

**INSURANCE CO.** NAME S E L F  (NOT AGENCY NAME)  POLICY NUMBER P E R M  EXPIRATION DATE 1 2 3 1 9 9 9 9

AGENT'S NAME/ADDRESS  PHONE # 3 3 7 – 2 9 1 – 8 2 0 0

| CODES | | | | | |
|------|------|------|------|------|------|
| **SEATING POSITION** | **EJECTION** | **TRAPPED OR EXTRICATED** | **AIRBAG** | **OCCUPANT PROTECTION SYSTEM USED** | **INJURY** |
| A - FRONT SEAT-LEFT SIDE (MOTORCYCLE DRIVER)<br>B - FRONT SEAT-MIDDLE<br>C - FRONT SEAT-RIGHT SIDE<br>D - SECOND SEAT-LEFT SIDE (MOTORCYCLE PASSENGER)<br>E - SECOND SEAT-MIDDLE<br>F - SECOND SEAT-RIGHT SIDE<br>G - THIRD ROW-LEFT SIDE (MOTORCYCLE PASSENGER)<br>H - THIRD ROW-MIDDLE<br>I - THIRD ROW-RIGHT SIDE | J - SLEEPER SECTION OF CAB (TRUCK)<br>K - PASSENGER IN OTHER ENCLOSED PASSENGER OR CARGO AREA (NON-TRAILING UNIT)<br>L - PASSENGER IN OTHER UNENCLOSED PASSENGER OR CARGO AREA (NON-TRAILING UNIT)<br>M - PASSENGER ON TRAIN OR STREETCAR<br>N - TRAILING UNIT<br>O - RIDING ON VEHICLE EXTERIOR (NON-TRAILING UNIT)<br>Y - UNKNOWN | A- NOT EJECTED<br>B- TOTALLY EJECTED<br>C- PARTIALLY EJECTED<br>Y- UNKNOWN | A- NOT TRAPPED<br>B- TRAPPED/EXTRI-CATED<br>C- TRAPPED/NOT EXTRICATED<br>Y- UNKNOWN | A- DEPLOYED<br>B- NON DEPLOYED<br>C- NON-DEPLOY-ED/SWITCH OFF<br>D- NOT APPLICABLE<br>Y- UNKNOWN | A- NONE USED-VEHICLE OCCUPANT<br>B- SHOULDER BELT ONLY USED<br>C- LAP BELT ONLY USED<br>D- SHOULDER AND LAP BELT USED<br>E- CHILD SAFETY SEAT IMPROPERLY USED<br>F- CHILD SAFETY SEAT USED<br>G- HELMET USED<br>Y- RESTRAINT USE UNKNOWN | A- FATAL<br>B- INCAPACITA-TING/SEVERE<br>C- NON-INCAPA-CITATING/ MODERATE<br>D- POSSIBLE/ COMPLAINT<br>E- NO INJURY |

WRITE APPROPRIATE LETTER IN BLOCK

# CONTRIBUTING FACTORS AND CONDITIONS

20 - 00370669

## VISION OBSCURENCES  N

A. RAIN, SNOW, ETC. ON WINDSHIELD
B. WINDSHIELD OTHERWISE OBSCURED
C. VISION OBSCURED BY LOAD
D. TREES, BUSHES, ETC.
E. BUILDING
F. EMBANKMENT
G. SIGN BOARDS
H. HILLCREST
I. PARKED VEHICLES
J. MOVING VEHICLES
K. BLINDED BY HEADLIGHTS
L. BLINDED BY SUNGLARE
M. DISTRACTED BY NEON LIGHTS IN FIELD OF VIEW
N. NO OBSCUREMENTS
Y. UNKNOWN
Z. OTHER .................................................

## VIOLATION  U

A. EXCEEDING STATED SPEED LIMIT
B. EXCEEDING SAFE SPEED LIMIT
C. FAILURE TO YIELD
D. FOLLOWING TOO CLOSELY
E. DRIVING LEFT OF CENTER
F. CUTTING IN, IMPROPER PASSING
G. FAILURE TO SIGNAL
H. MADE WIDE RIGHT TURN
I. CUT CORNER ON LEFT TURN
J. TURNED FROM WRONG LANE
K. OTHER IMPROPER TURNING
L. DISREGARDED TRAFFIC CONTROL
M. IMPROPER STARTING
N. IMPROPER PARKING
O. FAILED TO SET OUT FLAGS, FLARES
Q. VEHICLE CONDITION
R. DRIVER CONDITION
S. CARELESS OPERATION
T. IMPROPER BACKING
U. NO VIOLATIONS
Y. UNKNOWN
Z. OTHER .................................................

## TRAFFIC CONTROL R

A. STOP SIGN
B. YIELD SIGN
C. RED SIGNAL ON
D. YELLOW SIGNAL ON
E. GREEN SIGNAL ON
F. GREEN TURN ARROW ON
G. RIGHT TURN ON RED
H. LIGHT PHASE UNKNOWN
I. FLASHING YELLOW
J. FLASHING RED
K. OFFICER, FLAGMAN
L. RR CROSSING, SIGN
M. RR CROSSING, SIGNAL
N. RR CROSSING, NO CONTROL
O. WARNING SIGN (SCHOOL, ETC.)
P. SCHOOL FLASHING SPEED SIGN
Q. YELLOW NO PASSING LINE
R. WHITE DASHED LINE
S. YELLOW DASHED LINE
T. BIKE LANE
U. CROSSWALK
V. NO CONTROL
Y. UNKNOWN
Z. OTHER .................................................

## CONDITION OF DRIVER/PED A

A. NORMAL
B. INATTENTIVE
C. DISTRACTED
D. ILLNESS
E. FATIGUED
F. APPARENTLY ASLEEP/BLACKOUT
G. DRINKING ALCOHOL - IMPAIRED
H. DRINKING ALCOHOL - NOT IMPAIRED
I. DRUG USE - IMPAIRED
J. DRUG USE - NOT IMPAIRED
K. PHYSICAL IMPAIRMENT (EYES, EAR, LIMB)
Y. UNKNOWN
Z. OTHER .................................................

## DRIVER DISTRACTION E

A. CELL PHONE
B. OTHER ELECTRONIC DEVICE (PAGER, PALM PILOT, NAVIGATION DEVICE, ETC.)
C. OTHER INSIDE THE VEHICLE
D. OTHER OUTSIDE THE VEHICLE
E. NOT DISTRACTED
Y. UNKNOWN

## REASON FOR MOVEMENT P

A. TO AVOID OTHER VEHICLE
B. TO AVOID PEDESTRIAN
C. TO AVOID ANIMAL
D. TO AVOID OTHER OBJECT
E. PASSING
F. VEHICLE OUT OF CONTROL, NOT PASSING
G. VEHICLE OUT OF CONTROL, PASSING
H. FOR TRAFFIC CONTROL
I. DUE TO CONGESTION
J. DUE TO PRIOR CRASH (COLLISION)
K. DUE TO DRIVER CONDITION
L. DUE TO DRIVER VIOLATION
M. DUE TO VEHICLE CONDITION (FAILURE)
N. DUE TO PAVEMENT CONDITION
O. HIGH WIND
N. NORMAL MOVEMENT
Y. UNKNOWN
Z. OTHER .................................................

## PEDESTRIAN ACTIONS

A. CROSSING, ENTERING ROAD AT INTERSECTION
B. CROSSING, ENTERING ROAD NOT AT INTERSECTION
C. WALKING IN ROAD – WITH TRAFFIC
D. WALKING IN ROAD – AGAINST TRAFFIC
E. SLEEPING IN ROADWAY
F. STANDING IN ROADWAY
G. GETTING ON OR OFF OTHER VEHICLE
H. PUSHING, WORKING ON VEHICLE IN ROAD
I. OTHER WORKING IN ROADWAY
J. PLAYING IN ROADWAY
K. NOT IN ROADWAY
Y. UNKNOWN
Z. OTHER

## NON COLLISION

A. OVERTURN/ROLLOVER
B. FIRE/EXPLOSION
C. IMMERSION
D. JACKKNIFE
E. CARGO/EQUIPMENT LOSS OR SHIFT
F. FELL/JUMPED FROM MOTOR VEHICLE
G. THROWN OR FALLING OBJECT
H. EQUIPMENT FAILURE (BLOWN TIRE, BRAKE FAILURE, ETC.)
I. SEPARATION OF UNITS IN TRANSPORT
J. RAN OFF ROAD RIGHT
K. RAN OFF ROAD LEFT
L. CROSSED MEDIAN/CENTERLINE
M. DOWNHILL RUNAWAY
N. OTHER NON-COLLISION

## COLLISION WITH PERSON, MOTOR VEHICLE, OR NON- FIXED OBJECT

O. PEDESTRIAN
P. PEDALCYCLE
Q. RAILWAY VEHICLE (TRAIN, ENGINE)
R. ANIMAL

S. MOTOR VEHICLE IN TRANSPORT
T. PARKED MOTOR VEHICLE
U. STRUCK BY FALLING, SHIFTING CARGO OR ANYTHING SET IN MOTION BY MOTOR VEHICLE
V. WORK ZONE/MAINTENANCE EQUIPMENT
W. OTHER NON-FIXED OBJECT

## COLLISION WITH FIXED OBJECT

X. IMPACT ATTENUATOR/CRASH CUSHION
Y. BRIDGE OVERHEAD STRUCTURE
Z. BRIDGE PIER OR SUPPORT
AA. BRIDGE RAIL
BB. CULVERT
CC. CURB
DD. DITCH
EE. EMBANKMENT
FF. GUARDRAIL FACE
GG. GUARDRAIL END
HH. CONCRETE TRAFFIC SUPPORT
II. OTHER TRAFFIC BARRIER
JJ. TREE (STANDING)
KK. UTILITY POLE/LIGHT SUPPORT

LL. TRAFFIC SIGN SUPPORT
MM. TRAFFIC SIGNAL SUPPORT
NN. OTHER POST, POLE, OR SUPPORT
OO. FENCE
PP. MAILBOX
QQ. OTHER FIXED OBJECT (WALL, BUILDING, TUNNEL, ETC.)
YY. UNKNOWN

### SEQUENCE OF EVENTS/HARMFUL EVENTS

| | |
|---|---|
| 1st | S |
| 2nd | |
| 3rd | |
| 4th | |

MOST HARMFUL EVENT   S

## MOVEMENT PRIOR TO CRASH A

A. STOPPED
B. PROCEEDING STRAIGHT AHEAD
C. TRAVELING WRONG WAY
D. BACKING
E. CROSSED MEDIAN INTO OPPOSING LANE
F. CROSSED CENTER LINE INTO OPPOSING LANE
G. RAN OFF ROAD (NOT WHILE MAKING TURN AT INTERSECTION)
H. CHANGING LANES ON MULTI-LANE ROAD
I. MAKING LEFT TURN
J. MAKING RIGHT TURN

K. STOPPED PREPARING TO, OR MAKING U-TURN
L. MAKING TURN, DIRECTION UNKNOWN
M. STOPPED, PREPARING TO TURN LEFT
N. STOPPED, PREPARING TO TURN RIGHT
O. SLOWING TO MAKE LEFT TURN
P. SLOWING TO MAKE RIGHT TURN
Q. SLOWING TO STOP
R. PROPERLY PARKED
S. PARKING MANEUVER

T. ENTERING TRAFFIC FROM SHOULDER
U. ENTERING TRAFFIC FROM MEDIAN
V. ENTERING TRAFFIC FROM PARKING LANE
W. ENTERING TRAFFIC FROM PRIVATE LANE OR DRIVEWAY
X. ENTERING FREEWAY FROM ON RAMP
Y. LEAVING FREEWAY VIA OFF RAMP
Z. OTHER OR UNKNOWN

## VEHICLE CONDITION K

A. DEFECTIVE BRAKES
B. DEFECTIVE HEADLIGHTS
C. DEFECTIVE REAR LIGHTS
D. DEFECTIVE SIGNAL LIGHTS
E. ALL LIGHTS OUT
F. DEFECTIVE STEERING
G. TIRE FAILURE
H. WORN OR SMOOTH TIRES
I. ENGINE FAILURE
J. DEFECTIVE SUSPENSION
K. NO DEFECTS OBSERVED
Y. UNKNOWN
Z. OTHER .................................................

## VEHICLE LIGHTING B

A. HEADLIGHTS ON
B. HEADLIGHTS OFF
C. DAYTIME RUNNING LIGHTS
Y. UNKNOWN

## TRAFFIC CONTROL CONDITIONS A

A. CONTROLS FUNCTIONING
B. CONTROLS NOT FUNCTIONING
C. CONTROLS OBSCURED
D. LANE MARKING UNCLEAR OR DEFECTIVE
E. NO CONTROLS
Y. UNKNOWN

## ALCOHOL/DRUG INVOLVEMENT

ALCOHOL/DRUGS SUSPECTED..........................   A
A. NEITHER ALCOHOL NOR DRUGS
B. YES-ALCOHOL
C. YES-DRUGS
D. YES-ALCOHOL AND DRUGS
Y. UNKNOWN

ALCOHOL ..........................................................   B
A. TEST REFUSED
B. NO TEST GIVEN
C. TEST GIVEN, RESULTS PENDING   0
D. TEST GIVEN, BAC ................    _____ g%

DRUGS ..............................................................   A
A. TEST NOT GIVEN
B. TEST GIVEN, RESULTS PENDING
C. TEST REFUSED
D. DRUGS REPORTED (SPECIFY IN NARRATIVE)

AFFIX BLOOD ALCOHOL KIT LABEL HERE

(OR ENTER BLOOD ALCOHOL KIT NUMBER)

| DIRECTION BEFORE CRASH | FINAL LOCATION | DISTANCE TRAVELED | SPEED | | SKIDMARK DATA (FEET) | | | |
|---|---|---|---|---|---|---|---|---|
| HEADED | ON HIGHWAY, STREET OR DRIVE | OF VEHICLES | AFTER IMPACT | EST. | POSTED | FR | FL | RR | RL |

E   N E / S W   PINHOOK RD    | MOVED | UNK | UNK | 40 | 0 | 0 | 0 | 0 |

## DAMAGE TO VEHICLE

AREA DAMAGED    F

EXTENT OF DEFORMITY   B

N- UNDER-CARRIAGE
O- TOTAL
P- OTHER
Q- NONE
Y- UNKNOWN

1ST   2ND   3RD

A- NONE
B- VERY MINOR
C- MINOR
D- MINOR/MODERATE
E- MODERATE
F- MODERATE/SEVERE
G- SEVERE
H-VERY SEVERE
Y-UNKNOWN

1ST   2ND   3RD

CITATION NO
VEH.  PED.

R.S. OR ORD. NO

NONE ☒ ☐

NOTICE OF INSURANCE VIOLATION ................ ☐


INVESTIGATING OFFICER'S INITIALS

**OFFICER'S NARRATIVE:** DESCRIBE ANY UNUSUAL CIRCUMSTANCES ASSOCIATED WITH CRASH, INCLUDING OFFICER'S OBSERVATIONS AND OPINIONS.
INCLUDE WITNESS NAMES, ADDRESSES, PHONE NUMBERS, ETC.

PAGE #

0 6

IF NECESSARY, INDICATE DAMAGE TO PUBLIC OR PRIVATE PROPERTY (WITH OWNER'S NAME & ADDRESS) AT THE END OF THE NARRATIVE.

**REFER TO EACH BY VEHICLE NUMBER**    20-00370669

Driver 1 advised he was exiting the parking lot of the Gulf gas station (1332 SW Evangeline THWY).
Driver 1 attempted to merge into East bound traffic. As he's merging, the cargo of Vehicle 1 impacts
the passenger rear fender.

Driver 2 advised he was stopped in the far outside lane, waiting for traffic to proceed. Driver 2
observes Vehicle 1 attempting to merge into traffic behind him. At this time, Vehicle 2 was impacted
by Vehicle 1 on the passenger rear fender.

Medical assistance was refused on scene. No independent witnesses were available on scene. Driver 1
was cited for Careless Operation. Written statements were obtained from both drivers. Case cards
were provided on scene.

Investigation completed by PO B. Anderson



STATE OF LOUISIANA
UNIFORM MOTOR VEHICLE TRAFFIC CRASH REPORT
DRIVER/WITNESS VOLUNTARY STATEMENT

COMPUTER NUMBER          PAGE #

20-370149

DATE 10/20/20     TIME 1:45 PLACE E. Pinhook & Evangeline

I, Nicholas Berry                AM   44   YEARS OF AGE,

MY ADDRESS IS 7913 Fox Creek Dr.   Olive Branch, MS

AND MY TELEPHONE NUMBER IS (404) 723 - 0026

I was exiting parking of gas station w/ a left turn. As I'm watching blindside for cars I side swipe a pick up truck on my left with rear side of trailer. No injuries, nor fatalties

## * PASSENGER INFORMATION

Name:                        Name:

Age:                         Age:

Address:                     Address:

Phone #:                     phone:

Seat Position:               Seat Position:

THE ABOVE STATEMENT, TO THE BEST OF MY KNOWLEDGE, IS A TRUE AND CORRECT
ACCOUNT OF MY RECOLLECTION IN THE ABOVE DESCRIBED MOTOR VEHICLE CRASH

Seat Positions:   FRONT ↑
                  (ROW 1)
A         B         C
Driver   Middle   Passenger

D         E         F    (Row 2)

G         H         I    (Row 3)

SIGN: Nicholas Berry

OFFICER: _____

STATE OF LOUISIANA
UNIFORM MOTOR VEHICLE TRAFFIC CRASH REPORT
DRIVER/WITNESS VOLUNTARY STATEMENT

COMPUTER NUMBER     PAGE #

20-370668

DATE 10/20/20      TIME 1:20 pm   PLACE Pinhook / Evangeline THWY

I, Felton Broussard Jr            AM    40    YEARS OF AGE,

MY ADDRESS IS  440 S Larriviere  Youngsville La

AND MY TELEPHONE NUMBER IS (337) 412 – 0895

I Felton Broussard Jr was at the Red Light when a
18 wheeler coming from the Gulf station came around the
truck and side swap my back passenger side rear finder
and back tail light.

B.A #931

**✳ PASSENGER INFORMATION**

Name:                          Name:
Age:                           Age:
Address:                       Address:
Phone #:                       phone:
Seat Position:                 Seat Position:

THE ABOVE STATEMENT, TO THE BEST OF MY KNOWLEDGE, IS A TRUE AND CORRECT
ACCOUNT OF MY RECOLLECTION IN THE ABOVE DESCRIBED MOTOR VEHICLE CRASH

Seat Positions:  FRONT ↑
                        (ROW 1)
A        B        C
Driver   Middle   Passenger

D        E        F     (ROW 2)

G        H        I     (ROW 3)

SIGN: _____

OFFICER: P.O B. Anderson #931

5/13/2021 1:45:10 PM





5/13/2021 1:45:11 PM



5/13/2021 1:45:12 PM



5/13/2021 1:45:13 PM



5/13/2021 1:45:14 PM





4095

# HILLSIDE LOGISTICS CO. LLC

**OWNER OPERATION LEASE AGREEMENT**

This agreement made and entered into this ___03___ day ___06___ 20___20___

by_____FAITH      AYAKO_____ here in after

known as and referred to as "EQUIPMENT OWNER/CONTRACT DRIVER and HILLSIDE

LOGISTICS CO., LLC hereinafter known as and referred to as "Motor Carrier".


Whereas Motor Carrier is a contract common carrier and is engaged in transporting commodities, merchandise, and property requiring similar specialized equipment and handling for hire throughout the United States using Motor vehicles owned and operated by others; and Whereas, Equipment Owner is the OWNER of certain motor vehicle equipment, and employs contract drivers including himself/herself or hires drivers to operate said motor vehicle equipment; and Whereas, it is the desire of the parties to this agreement that the Equipment Owner lease to the Motor Carrier said equipment, furnished with driver or drivers that are not employees of HILLSIDE LOGISTICS CO., LLC but independent contractors.

Now, therefore, the Equipment Owner as an independent contractor, leases said motor vehicle equipment furnished with driver to the Motor Carrier, and the Motor Carrier hereby acknowledges the leasing of said equipment. In consideration of the promises and covenants herein contained, the parties do agree.


**IT IS MUTUALLY AGREED THAT:**

**1. RIGHT OF OWNERSHIP:**

Equipment Owner represents to Motor Carrier that he/she holds full legal title or that he/ she has the legal right to exercise full control over the equipment covered by this Agreement. Equipment Owner agrees to furnish Motor Carrier all necessary information and documents of title or registration to enable Motor Carrier to properly identify said equipment.


**2. EXCLUSIVE USE:**

Possession and use of the equipment involved is, for the period of the agreement, entirely vested in Motor Carrier, in such a way as to be good against all the words, including Equipment Owner.

# HILLSIDE LOGISTICS CO. LLC

## 3. SAFE AND COMPLETE EQUIPMENT:

Equipment Owner warrants that the equipment covered by this Agreement is complete with all required accessories, and is in good, safe and efficient operating condition and shall be so maintained at no expense to Motor Carrier throughout the duration of this Agreement. Except for the trailer equipment provided by the motor carrier, the choice of location and persons to perform any necessary repairs or maintenance is exclusively vested in Equipment Owner.

## 4. PACKING AND SECURING FREIGHT

The equipment operator agrees to secure all the items to be transported as is necessary for either the safe transportation of the item(s) as is required by motor carrier customer or US department of transportation. The equipment operator at his/her own expense must have two load locks and two load straps.

## 5. COMPLIANCE WITH APPLICABLE LAW(S):

The parties hereto understand and agree that Motor Carrier is subject to rules and regulations enacted by the federal and state governments of the United States of America; that there are certain rules and regulations related to commercial transportation that the motor carrier must abide by. That is the intent of the parties that Motor Carrier, The Equipment owner and all his/her contract drivers shall fully comply with all such applicable rules and regulations and the Equipment Owner / contract drivers do not have the right to and will not control the manner nor prescribe the method of doing that portion of the operations which are contracted for this Agreement, except such control as is reasonably construed to be required by said rules and regulations. Some of the applicable laws include but not limited to:

## 4) INSURANCE:

a) Owner operator must maintain physical damage and non-trucking insurance at all times

b) Down Payment insurance of $1500 is required prior to adding truck to the company. This amount is non-refundable and if paid for by the company it must be recovered from the next settlement

# HILLSIDE LOGISTICS CO. LLC

## 5. EMPLOYMENT:

Owner operator is NOT an employee of HILLSIDE LOGISTICS CO., LLC nor of its affiliate companies. The engagement between HILLSIDE LOGISTICS CO., LLC and owner operator is solely on contractual basis as defined by the terms of this lease agreement. Motor carrier reserves the right to terminate this contract with the owner operator without any notice. In cases where the owner operator has a driver working at HILLSIDE LOGISTICS CO, LLC the driver is employed by the owner operator and not HILLSIDE LOGISTICS CO., LLC. Owner operator is responsible for issuing the driver with a 1099 at the end of the year.

## EQUIPMENT REPAIR AND MAINTENANCE:

The Motor Carrier through its Safety Department shall always inspect all the equipment to make sure that the Owner operator/contract driver is always keeping his/her equipment in safe operating condition throughout the leasing period based on the US Department of Transportation Guidelines. Keeping the equipment's safe shall involve:

**-Regular inspections**

This must be done by the Motor carrier safety Department at intervals of every time the truck/trailer is at the Motor Carriers terminal once per month or whichever comes first. The motor carrier may also send the driver to get his equipment inspected at a certified truck repair shop of the Motor Carrier's choosing.

**-Preventive Maintenance services**

The truck and trailer must be preventatively maintained every month through a certified truck repair shop of the motor carrier's choosing. **A pm service without a trailer shall not be recognized. Receipts must be faxed to the Motor Carrier's Safety Department promptly.**

**-Prompt repairs on faulty equipment and accessories.**

Contract Drivers must perform pre-trip and post-trip inspections of the tractor and trailer every day. Any defects found must be promptly repaired. During inspection or pm service, if any violations/defaults are discovered, the Truck/trailer shall be declared out of service. If your truck/trailer is out of service, you won't be dispatched until you show proof of compliance to the motor carrier's safety department. Too many Equipment violations shall result in the termination of this contract.

# HILLSIDE LOGISTICS CO. LLC

**DOT ROADSIDE INSPECTIONS**

DOT roadside inspections must be reported to the Safety Department immediately. Any DOT/POLICE report with any kind of Logbook violation, it doesn't matter if the violation is only one in a report and its minor shall qualify a driver for **$150.00** fine per report. - Any DOT/POLICE report with any kind of truck or trailer violation involving tires, breaks and lights it doesn't matter if the violation is only one in a report and its minor shall qualify a driver for **$150.00** as an enforcement of pre-post trip inspection. - Any moving violations or lack of or expired document violations shall qualify a driver for **$150.00** fine per occurrence. - Only one form of fine shall apply in case of tractor/trailer, logbook and moving/non-moving violations showing up in one single report. Whichever is higher? - All the recommendations made by the DOT/POLICE officer must be complied absolutely and strictly. All DOT/POLICE Inspection Reports must be faxed to the Safety department within 24 hours. Failure to do so shall lead to immediate termination. The driver shall never be dispatched until the DOT/POLICE reports are compiled to. Any driver who fails to comply with DOT/POLICE OUT OF SERVICE ORDER shall be immediately terminated with **$500.00** fine - Any DOT/POLICE OUT OF SERVICE ORDER qualifies a driver for an automatic 24 HOUR Suspension right where it occurred. - Any DOT/POLICE NO VIOLATION REPORT shall qualify the driver **$100.00** reward per report. HILLSIDE LOGISTICS COMPANY, LLC shall reward up to $300 for clean Level 1 inspection. Excessive shut downs shall lead to a driver's termination.

**RIDERS.**

As long the truck equipment has the Motor Carrier's decals; by the motor carrier's insurance terms it's the driver who got qualified through the Motor Carrier who is only covered. In case of accidents or any claims, the Equipment Owner and his/her drivers agree that they shall be independently liable for any other persons who may be in that Motor Vehicle equipment. The Motor Carrier does not allow riders in the truck. Any driver who lets a rider to drive his/her truck shall be immediately terminated with **$1000.00** fine.

**DRUGS AND ALCOHOL**

Hillside has a zero tolerance policy on drugs and alcohol. There is random testing which every driver must undergo if selected by the consortium. At the same time the Motor Carriers office personnel are trained on how to reasonably detect drunk drivers or drivers under the influence of drugs. If any driver gets suspected, he/she shall be required to be immediately tested for alcohol

# HILLSIDE LOGISTICS CO. LLC

or a controlled substance. Failure to comply shall lead to immediate termination and reporting to the US department of transportation. If any driver tests positive in the random/Reasonable suspicion on drugs or alcohol, he/she shall be terminated immediately and reported to the US department of transportation.

## ACCIDENTS/INCIDENTS

1st- In case of any kind of accident are drivers are required to follow the DOT prescribed accident procedures. A drug test (if required) must be conducted as soon as possible and at a place where the Safety Department directs. Failure to follow accident procedures shall lead to immediate termination.

2nd- For any kind of accident /Incident at fault or not a **$1000.00** shall be deducted from the Equipment Owner/driver's first check after the accident/incident. This money is a fine to the Equipment Owner and his/her drivers for the loss that the Motor Carrier suffers in terms of high insurance premiums and the consequences of negative safety ratings due to accidents. This money shall also be used to cover any public liability deductibles that may arise as a result of the accident and processing fees. If the Motor Carrier's Safety Department later determines that the driver was not at fault and none of the motor Carrier's property is damaged, then $1000.00 shall be refunded. If the Motor Carrier trailer equipment is involved the Motor Carrier shall also charge the equipment owner and his/her driver's trailer Physical damage insurance deductible plus any amount the Motor carrier may spend to get the said trailer from impound and bring it back to the Motor carrier's yard or assign it to another driver.  All incidents however small must also be reported immediately as they occur. The incident report must be filled at the place of occurrence and have the other person fill and sign. Failure to report an incident immediately shall lead to immediate termination. Further actions taken as a result of accidents/incidents shall be determined by the Safety Manager. For the purpose of fines, Accidents and incidents are treated the same way.

## G. Shortages and Damages to Cargo.

1st-All loads must be secured by two load locks and two load straps at the equipment owner's expense.

This is very important.

2nd-Never should any driver cut the seal unless authorized to do so by the receiving clerk. The driver must write the name of the person who authorized him to break the seal prior to opening the doors.

# HILLSIDE LOGISTICS CO. LLC

3rd-In case there are any shortages, damages or overages call your dispatcher immediately. Driver should never leave the dock until the matter is absolutely resolved. The dispatcher may require the driver to call the customer regarding the issue. The driver must make sure the dispatcher has a signed shortages and damages report sent from the customer/broker before the driver leaves the dock.

4th- The driver must take pictures.

5th- The receiving clerk must write on the bill of lading that "it is not the driver's fault" if the damage or shortage occurred because of reasons beyond the driver's control.

6th- The Motor Carrier shall deduct standard insurance deduction of $1000.00 from the driver for any load that has or are likely to have either a claim or short pay from the customer as a result of damages where the carrier is liable or deemed liable by the customer.

## 6. COMPENSATION

As EQUIPMENT OWNER, full and complete consideration and compensation for furnishing the equipment and personal services, and meeting obligations hereunder, MOTOR CARRIER will pay to EQUIPMENT OWNER: For all kinds of transport trips made on behalf of MOTOR CARRIER: The Motor Carrier shall pay the Equipment Owner the agreed percentage and after subtracting all agreed expenses (fuel cost, trailer rental cost, etc. Settlement, other than final settlement, will be made for the owner operator per agreed pay arrangement and after turning in all required paperwork. Paperwork for purpose of this provision is defined as those documents below:

## 7. CONFIDENTIALITY:

Owner Operator shall treat as confidential, and not to disclose to third parties, the terms of this agreement or any information concerning the Carrier's business including information regarding supplies, products and customers without in each instance obtaining Carrier's written consent in advance.

## 8. NOTICES:

All notices given pursuant to this agreement shall be given in writing by certified or registered mail, return receipt requested, and addressed as directed by the parties from time to time.

**CARRIERS: HILLSIDE LOGISTICS CO., LLC**

# HILLSIDE LOGISTICS CO. LLC

## 9. APPLICABLE LAW:

To the existent state law applies, this agreement shall be governed by and interpreted in accordance with the laws of the state of Texas.

**APPENDIX A**

**VIN**

1 M1 A W07 YX CM 02 4219

**MAKE**

MACK

**YEAR**

2012.

## HILLSIDE LOGISTICS CO. LLC

### SIGNATURES

X ___FAITH   AYAKO___          X _____

    NAME                                          SIGNATURE OF OWNER

OWNER OPERATOR ADDRESS ___8621 SAN JOAQUIN TRL Fort WORTH Tx___

OWNER OPERATOR CONTACT # ___682-552-0045___          *76118*

OWNER OPERATOR CONTACT EMAIL _____

X ___ERIC   KIARIE___          X ___Eric Kiarie___

    NAME                                          SIGNATURE OF OWNER

OFFICER MANAGER

FROM: Lunden Jones <LJones@hallmarkgrp.com>
TO: ClaimsLegalMail
SENT: Tuesday, November 2, 2021 10:40:21 AM Central Daylight Time
SUBJECT:
ATTACHMENTS: ScaNovatech21110210520.pdf;
===========================================================



# HLC

## HILLSIDE LOGISTICS CO., LLC

---

### LEASE TERMINATION

REF:   TRUCK #4093 VIN# 1M1AW21Y8FM048656
   TRUCK #4095 VIN# 1M1AW07YXCM024219
   TRUCK # 4060 VIN# 1XP7DB9X77D665428

The above referenced vehicle is no longer leased with HILLSIDE LOGISTICS LLC
Lease termination effective date: 05-01-2020

Signed by:     (Owner/Operator): _____

Signed by:  Eric Kiarie  (Operations Manager): _____

ERIC KIARIE

OPERATIONS MANAGER

**HILLSIDE Logistics CO., LLC**
_____

P. O. BOX 610081 DALLAS, TX 75261-0081. Tel: 214-241-4144 Fax: 214-594-4709

# HALLMARK COUNTY MUTUAL INSURANCE COMPANY

777 Main Street, Suite 1000
Fort Worth, Texas  76102
Phone (800) 866 0047

ADMINISTRATIVE OFFICES:
P.O. Box 40600 - 7550 IH 10 West, Suite 1400
San Antonio, Texas 78229

# BUSINESS AUTO COVERAGE FORM

**SPECIAL PROVISIONS**
This Company is licensed to operate under Chapter 912, Texas Insurance Code, as amended, and such statutes shall apply to and form a part of this policy the same as if written or printed upon, attached or appended hereto.
This policy is issued subject to the constitution and by-laws and all amendments thereto of the Company, which shall form a part of this policy.

**MUTUALS – MEMBERSHIP AND VOTING NOTICE**
The insured is notified that by virtue of this policy, he is a member of the Hallmark County Mutual Insurance Company, of Fort Worth, Texas and is entitled to vote either in person or by proxy at any and all meetings of said Company. The Annual Meetings are held in its Home Office in Fort Worth, Texas on the second Tuesday of January, in each year, at ten o'clock A.M.

**MUTUALS – PARTICIPATION CLAUSE WITHOUT CONTINGENT LIABILITY**
No Contingent Liability: This policy is non-assessable. The policyholder is a member of the Company and shall participate, to the extent and upon the conditions fixed and determined by the Board of Directors in accordance with the provisions of law, in the distribution of dividends so fixed and determined.

**In Witness Whereof,** the Company has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

Naveen Anand, President                                    **Jeff Passmore, Secretary**

NOTICE: The Automobile Burglary and Theft Prevention Authority fee is payable in addition to the premium due under this policy. This fee reimburses the insurer, as permitted by 28 TAC§5.205, for the $2.00 fee per motor vehicle year required to be paid to the Automobile Burglary and Theft Prevention Authority under Texas Civil Statues, Article 4413 (37), §10, which became effective on June 6, 1991, and revised effective September 1, 2011.

## IMPORTANT NOTICE

To obtain information or make a complaint:

You may call company's toll-free telephone number for information or to make a complaint at:

### 1-800-677-5170

You may also write to (company) at:

P O Box 40600
San Antonio, TX 78229

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

### 1-800-252-3439

You may write the Texas Department of Insurance:

P. O. Box 149104
Austin, TX 78714-9104
Fax: (512) 490-1007
Web: http:// www.tdi.texas.gov
E-mail: ConsumerProtection@tdi.texas.gov

**PREMIUM OR CLAIM DISPUTES:**

Should you have a dispute concerning your premium or about a claim you should contact the (agent) (company) (agent or the company) first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:** This notice is for information only and does not become a part or condition of the attached document.

## AVISO IMPORTANTE

Para obtener informacion o para someter una queja:

Usted puede llamar al numero de telefono gratis de company's para informacion o para someter una queja al:

### 1-800-677-5170

Usted tambien puede escribir a (company):

P O Box 40600
San Antonio, TX 78229

Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al:

### 1-800-252-3439

Puede escribir al Departamento de Seguros de Texas:

P. O. Box 149104
Austin, TX 78714-9104
Fax: (512) 490-1007
Web: http:// www.tdi.texas.gov
E-mail: ConsumerProtection@tdi.texas.gov

**DISPUTAS SOBRE PRIMAS O RECLAMOS:** Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el (agente) (la compania) (agente o la compania) primero.Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

**UNA ESTE AVISO A SU POLIZA:** Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

# Hallmark County Mutual Insurance Company

## **PRIVACY POLICY DISCLOSURE NOTICE**

The Gramm-Leach-Bliley Act (GLBA) and various other federal and state privacy regulations generally prohibit any financial institution, directly or through its affiliates, from sharing nonpublic personal information about you with a non-affiliated third party unless the institution provides you with a notice of its privacy policies and practices, such as the type of information that it collects about you and the categories of persons or entities to whom it may be disclosed.

Hallmark County Mutual Insurance Company, through its subsidiaries, provides insurance products and services and is firmly committed to its affirmative and continuing obligation to respect the privacy of its current, former and prospective policyholders and to protect the security and confidentiality of their nonpublic personal information. Therefore, proper handling of your personal information is one of our highest priorities. We collect and utilize information we believe is necessary to efficiently administer our business, to advise you about our products, and provide you with outstanding customer service.  We want you to know why we collect personal information about you, what we do with that information and explain to you our commitment to protect the information collected.

In order to provide you with quality insurance products and the service you deserve, it is necessary for us to collect nonpublic personal information about you and, in certain situations, to share that information with others. The following notice describes our policies and practices with regard to your nonpublic personal information.

**PROTECTION OF YOUR PERSONAL INFORMATION**

Not only is the protection of nonpublic personal information a legal requirement, it is also a good business practice. We maintain appropriate physical, electronic and procedural safeguards to maintain the confidentiality and security of your nonpublic personal information.  We restrict access to nonpublic personal information about you to those employees who need access to that information to provide products or services to you.  When information is shared with companies performing work on Hallmark County Mutual Insurance Company's behalf, we protect your personal information where required by law with contractual confidentiality agreements that obligate those companies to keep confidential any information about you furnished to them.

We provide training to our employees on the importance of maintaining the confidentiality and security of your nonpublic personal information.  Employees who violate our privacy policies are appropriately disciplined.

**CATEGORIES OF INFORMATION THAT WE COLLECT**

We collect and use only that nonpublic personal information required for us to provide services and products requested by you and to administer your business with us such as underwriting and processing your policies and the administration and handling of claims.

We may collect nonpublic personal information about you from the following sources:

- Information that we receive from you on applications and other related forms such as your name, address, telephone number, and social security number;

- Information about your transactions with us, our affiliates or others such as your underwriting information, driving record, claim history, policy number, premium, payment history, and claim information;

- Information that we receive from consumer credit reporting agencies such as your credit history.

The nonpublic personal information collected may come from persons such as independent insurance agents, brokers, policyholders, or persons involved in the claim adjustment process such as claimants, witnesses to an accident, repair facilities, doctors and attorneys.

**CATEGORIES OF INFORMATION THAT WE DISCLOSE AND PARTIES TO WHOM WE MAY DISCLOSE INFORMATION**

We do not disclose any nonpublic personal information about our customers or former customers to anyone, except as permitted by law.  Hallmark County Mutual Insurance Company does not sell or distribute for sale any nonpublic personal information.  Nor do we disclose your personal information to any person, company or organization not affiliated with us for their own marketing purposes.

However, we may disclose nonpublic personal information about our policyholders (current, former and prospective) with affiliated and non-affiliated third parties as necessary to service an insurance policy or claim or as permitted or required by law.  We may disclose nonpublic personal information we collect about you to third parties with whom we contract to perform business functions such as record keeping, policy administration, claim administration, billing, computer related services, distribution of materials, and joint marketing of our products and services.

We understand the importance and seriousness of protecting the confidentiality and security of your nonpublic personal information.  We respect and appreciate the trust that you, as a valued policyholder, have placed with us and we continuously strive to earn and maintain that trust.

**CHANGES TO OUR NOTICE OF PRIVACY POLICY AND INSURANCE INFORMATION PRACTICES:**

We reserve the right to change our privacy policies and insurance information practices. If we make any material changes to our policies or practices, we will provide you with a copy of a revised notice.

If you have any questions regarding the content of this notice, you may call us at 1-800-677-5170 or you may write to us at:

**Hallmark County Mutual Insurance Company**
**P.O. Box 40600**
**San Antonio, TX  78229**


**Corporate Location:**
**777 Main St., Suite 1000**
**Ft. Worth, TX  76102**

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

 © ISO Properties, Inc., 2004

**DECLARATIONS**
# HALLMARK COUNTY
# MUTUAL INSURANCE COMPANY
Dallas, Texas

| | | |
|---|---|---|
| **Policy No.** A42520472 | | ☒ The declarations include a second part designated "Part 2" |
| **ITEM ONE** | | |

**Name Insured and Mailing Address** (NO., STREET, TOWN OR CITY, COUNTY, STATE, ZIP CODE)

HILLSIDE LOGISTICS CO LLC
PO BOX 610081
DALLAS TX 75261

Producer:          000563
BURNS & WILCOX LTD

TRUCKER

**Policy Period:** From     2/4/2020     To     2/4/2021     at 12:01 A.M. Standard Time at your mailing address shown above

**Form of Business:** ☒ Corporation  ☐ Partnership  ☐ Individual  ☐ Other _____

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**ITEM TWO - SCHEDULE OF COVERAGES AND COVERED AUTOS**

This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to **autos** shown as covered **autos**. **Autos** are shown as covered autos for a particular coverage by the entry of one or more of the symbols from the covered **autos** Section of the Business Auto Coverage Form next to the name of the coverage.

| COVERAGES | COVERED AUTOS (Entry of one or more of the symbols from the COVERED AUTOS Section of the Business Auto Coverage Form shows which autos are covered autos) | LIMIT THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | PREMIUM |
|---|---|---|---|
| LIABILITY | | | |
| **Bodily Injury** | | $               each person/ $              each accident | $ ■■■■ |
| **Property Damage** | | $               each accident | |
| **Combined Liability** | 7    8    9 | $      1,000,000    each accident | |
| PERSONAL INJURY PROTECTION (P.I.P) | | $               per person | $ |
| AUTO MEDICAL PAYMENTS | | $ | $ |
| UNINSURED/UNDERINSURED MOTORISTS | | | |
| **Bodily Injury** | | $               each person/ $              each accident | |
| **Property Damage** | | $               each accident | $ |
| **Combined Liability** | | $               each accident | |
| PHYSICAL DAMAGE COMPREHENSIVE COVERAGE | | STATED AMOUNT $         , ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $ ■ Ded. FOR EACH COVERED **AUTO** BUT NO DEDUCTIBLE APPLIES TO **LOSS** CAUSED BY FIRE OR LIGHTNING † | $ |
| PHYSICAL DAMAGE SPECIFIED CAUSES OF LOSS COVERAGE | | STATED AMOUNT $              , ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $ ■ Ded. FOR EACH COVERED **AUTO FOR LOSS** CAUSED BY MISCHIEF OR VANDALISM † | $ |
| PHYSICAL DAMAGE COLLISION COVERAGE | | STATED AMOUNT $         , ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $              Ded. FOR EACH COVERED **AUTO** † | $ |
| PHYSICAL DAMAGE TOWING AND LABOR | | for each disablement of a private passenger auto | $ |

| | | |
|---|---|---|
| ENDORSEMENTS ATTACHED TO THIS POLICY: | PREMIUM FOR ENDORSEMENTS $ | |
| See attached Schedule of Forms and Endorsements -  TXCA100 | FULLY EARNED POLICY FEE $ ■■■■ | |
| S/C  1.10 | Automobile Theft Prevention Authority Fee $ ■■■ | |
| Premium shown is payable: $ ■■■■  at inception | ESTIMATED TOTAL PREMIUM   $ ■■■■ | † See ITEM FOUR for hired or borrowed autos |

**ITEM THREE - SCHEDULE OF COVERED AUTOS YOU OWN**

| Covered Auto NO. | DESCRIPTION Year; Model; Trade Name; Body Type Serial Number (S); Vehicle Identification Number (VIN) | PURCHASED Original Cost New | Actual Cost & | NEW (N) USED (U) | TERRITORY: Town & State Where the Covered **Auto** will be principally garaged |
|---|---|---|---|---|---|
| 1 | 2013 FREIGHTLINER  TRACTOR  1FUJGLDRDSBU5577 | | | | GRAND PRAIRE , TX 943 |
| 2 | HIRED AUTO | | | | GRAND PRAIRE , TX 002 |
| 3 | NONOWNED AUTO | | | | GRAND PRAIRE , TX 002 |

**CLASSIFICATION**

| Covered Auto NO. | Radius of Operation (In Miles) | Business use s=service r=retail c=commercial | Size GVW, GCW or vehicle Seating Capacity | Age Group | Primary Rating Factor Liab | Primary Rating Factor Phy. Damage | Secondary Rating Factor | Code | |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 999 | C | 80,000 | 8 | 1.23 | | 2.50 | 50321 | Except for Towing all physical damage loss is payable to you and the loss Payee named below as interest may appear at the time of the loss |
| 2 | 100 | S | | | | | | 6619 | |
| 3 | 100 | S | | | | | | 7000 | |

THESE DECLARATIONS TOGETHER WITH THE POLICY JACKET, BUSINESS AUTO COVERAGE FORM COMMON POLICY CONDITIONS AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

TX CA 1A (08/09)

**POLICY NUMBER** 22-25-2024

**PART 2**

**ITEM THREE (Cont'd)**

**BUSINESS AUTO COVERAGE FORM DECLARATIONS (Continued)**

### COVERAGES-PREMIUMS, LIMITS AND DEDUCTIBLES

ITEM TWO (Absence of a deductilbe or limit entry in any column below means that the limit or deductible entry in the corresponding column applies instead)

| Cov ered Auto No. | LIABILITY Limit (in Thou sands) | Premium | PERSONAL INJURY PROTECTION Limit (in Thou sands) | Pre- mium | AUTO. MED. PAY Limit (in Thou sands) | Pre- mium | UNINSURED/ UNDERINSURED MOTOTISTS Limit (in Thou sands) | Pre- mium | COMPREHENSIVE Limit* minus deductible shown below | Pre- mium | SPEC. CAUSES OF LOSS Limit* Premium | COLLISION Limit* minus deductible shown below | Premium | TOWING & LABOR Limit per dis- ablement | Premium |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | ▉ | | | | | | | | | | | | | |
| 2 | | ▉ | | | | | | | | | | | | | |
| 3 | | ▉ | | | | | | | | | | | | | |
| Total Premium | | ▉ | XXX | | XXX | | XXXX | | XXX | | | XXXX | | XXX | |

*Limit stated in ITEM TWO.

### ITEM FOUR - SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS.

LIABILITY COVERAGE - RATING BASIS, COST OF HIRE

| STATE | ESTIMATED COST OF HIRE FOR EACH STATE | RATE PER EACH $100 COST OF HIRE | FACTOR (IF LIAB. COV. IS PRIMARY) | PREMIUM |
|---|---|---|---|---|
| TX | IF ANY | | | $ ▉ |
| | | | | $ |
| | | | | $ |
| | | | | $ |
| | | | | $ |
| | | | TOTAL PREMIUM | $ 73 |

Cost of hire means the total amount you incur for the hire of **autos** you don't own (not including **autos** you borrow or rent from your employees or their family members). Cost of hire does not include charges for services for services performed by motor carriers of property or passengers.

### PHYSICAL DAMAGE COVERAGE

| COVERAGES | | LIMIT OF INSURANCE THE MOST WE WILL PAY, DEDUCTIBLE | RATE | PREMIUM |
|---|---|---|---|---|
| COMPREHENSIVE | ACTUAL CASH VALUE, COST OF REPAIRS OR | $ , WHICHEVER IS LESS, MINUS $ DEDUCTIBLE FOR EACH COVERED **AUTO** BUT NO DEDUCTIBLE APPLIES TO **LOSS** CAUSED BY FIRE OR LIGHTNING. | | |
| SPECIFIED CAUS OF LOSS | | $ , WHICHEVER IS LESS, MINUS ▉ DEDUCTIBLE FOR EACH COVERED **AUTO** FOR **LOSS** CAUSED BY MISCHIEF, OR VANDALISM. | | |
| COLLISION | | $ , WHICHEVER IS LESS, MINUS $ DEDUCTIBLE FOR EACH COVERED **AUTO**. | | |
| | | | TOTAL PREMIUM | |

PHYSICAL DAMAGE COVERAGE for covered **autos** you hire or borrow is excess unless indicated by  X

☐ If this box checked, PHYSICAL DAMAGE COVERAGE applies on a direct primary basis and for purposes of the condition entitled OTHER INSURANCE, any covered **auto** you hire or borrow to is deemed to be a covered **auto** you  own.

### ITEM FIVE - SCHEDULE FOR NON-OWNERSHIP LIABILITY

| NAMED INSURED'S BUSINESS | RATING BASIS | NUMBER | PREMIUM |
|---|---|---|---|
| Other than a Social Service Agency | Number of Employees | IF ANY | $ ▉ |
| | Number of Partners | | $ |
| Social Service Agency | Number of Employees | | $ |
| | Number of Volunteers | | $ |
| | | | $ ▉ |

### ITEM SIX - SCHEDULE FOR GROSS RECEIPTS OR MILEAGE BASIS - LIABILITY COVERAGE -   PUBLIC AUTO OR LEASING RENTAL CONCERNS

| Estimated Yearly ☐ Gross Receipts ☐ Mileage | ☐ Per $100 of Gross Receipts ☐ Per Mile | | | PREMIUMS | | |
|---|---|---|---|---|---|---|
| | LIABILITY COVERAGE | AUTO MED. PAYMENTS | P.I.P. | LIABILITY COVERAGE | AUTO MED. PAYMENTS | P.I.P. |
| | | | | $ | $ | $ |
| | | | | $ | $ | $ |
| | | | | $ | $ | $ |
| | | | | $ | $ | $ |
| | | | | $ | $ | $ |
| | | | | $ | $ | $ |
| | | TOTAL PREMIUMS | | $ | $ | $ |
| | | MINIMUM PREMIUMS | | $ | $ | $ |

When used as a premium basis:

**FOR PUBLIC AUTOS**

Gross Receipts means the total amount to which you are entitled for transporting passengers, mail or merchandise during the policy regardless of whether you or any other carrier originate the transportation. Gross Receipts does not include:
A. Amount you pay to railroads, steamship lines, airlines and other motor carriers operating under their own ICC or PUC permits.
B. Advertising Revenue.
C. Taxes which you collect as a separate item and remit directly to a governmental division.
D. C.O.D. collections for cost of mail or merchandise including collection fees.
Mileage means the total live and dead mileage of all revenue producing units operated during the policy period.

**FOR RENTAL OR LEASING CONCERNS**

Gross Receipts means the total amount  which you are entitled for the leasing or rental of **autos**  during the policy period and includes taxes except those taxes which you collect as a separate item and remit directly to a governmental division.
Mileage means the total of all live and dead milage developed by all the **autos**  you leased or rented to others during the policy period.

TXCA1B (08/09)

POLICY NUMBER:  A42520472                                                    COMMERCIAL AUTO

# SCHEDULE OF FORMS AND ENDORSEMENTS
(other than applicable forms and endorsements shown elsewhere in the policy)

Forms and Endorsements applying to the Coverage and made a part of this policy at time of issues and designated by an  ☒

## TEXAS COMMERCIAL AUTO FORMS

| | |
|---|---|
| Commercial Auto Policy Jacket | HCMTXCAJAC2017 (01/17) |
| Important Notice | HCMNOTICE (08/16) |
| Privacy Policy Disclosure Notice | MP10670303_HCM (03/03) |
| U.S. Treasury Departments Office Of Foreign Assets Control (OFAC) Advisory Notice | IL P 001 (01/04) |
| Business Auto Coverage Form Declarations | TXCA1A (08/09) |
| Business Auto Coverage Form Declarations Continued | TXCA1B (08/09) |
| Business Auto Schedule of Forms and Endorsements | TXCA100 (08/09) |
| Business Auto Coverage Form | CA0001 (03/06) |
| Texas Changes | CA0196 (03/06) |
| Texas Changes - Cancellation And Nonrenewal | CA0243 (03/01) |
| Mobile Equipment | CA2015 (12/04) |
| Calculation of Premium | IL0003 (09/08) |
| Common Policy Conditions | IL0017 (11/98) |
| Nuclear Energy Liability Exclusion Endorsement | IL0021 (09/08) |
| Texas Form F-1 - Uniform Commercial Motor Vehicle Bodily In | CA2336 (11/01) |
| Motor Carrier Endorsement | MCS 90 (01/80) |

COMMERCIAL AUTO
CA 00 01 03 06

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V - Definitions.

**SECTION I - COVERED AUTOS**

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description Of Covered Auto Designation symbols**

| Symbol | Description Of Covered Auto Designation Symbols | |
|---|---|---|
| **1** | Any "Auto" | |
| **2** | Owned "Autos" Only | Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| **3** | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| **4** | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| **5** | Owned "Autos" Subject To No-Fault | Only those "autos" you own that are required to have No-Fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have No-Fault benefits in the state where they are licensed or principally garaged. |
| **6** | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| **7** | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| **8** | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| **9** | Nonowned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs. |

   © ISO Properties, Inc., 2005

| 19 | Mobile Equipment Subject To Compulsory Or Financial Responsibility Or Other Motor Vehicle Insurance Law Only | Only those "autos" that are land vehicles and that would qualify under the definition of "mobile equipment" under this policy if they were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where they are licensed or principally garaged. |
|---|---|---|

## B. Owned Autos You Acquire After The Policy Begins

**1.** If Symbols **1, 2, 3, 4, 5, 6** or **19** are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for    the remainder of the policy period.

**2.** But, if Symbol **7** is entered next to a  coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

**a.** We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

**b.** You tell us within 30 days after you    acquire it that you want us to cover it for that coverage

## C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos

If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage:

**1.** "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

**2.** "Mobile equipment" while being carried or towed by a covered "auto".

**3.** Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

**a.** Breakdown;
**b.** Repair;
**c.** Servicing;
**d.** "Loss"; or
**e.** Destruction.

## SECTION II . LIABILITY COVERAGE
## A. Coverage

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

**1. Who Is An Insured**

The following are "insureds":

**a.** You for any covered "auto".

**b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

**(1)** The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

© ISO Properties, Inc., 2005

**(2)** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

**(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

**(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

**(5)** A partner (if you are a partnership), or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

**c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

**2. Coverage Extensions**
   **a. Supplementary Payments**
   We will pay for the "insured":
**(1)** All expenses we incur.
**(2)** Up to $2,000 for cost of bail bonds including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.
**(3)** The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.
**(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.
**(5)** All costs taxed against the "insured" in any "suit" against the "insured" we defend.
**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**b. Out-Of-State Coverage Extensions**
   While a covered "auto" is away from the state where it is licensed we will:
**(1)** Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.
**(2)** Provide the minimum amounts and types of other coverages, such as nofault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

**B. Exclusions**
   This insurance does not apply to any of the following:
   **1. Expected Or Intended Injury**
   "Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".
   **2. Contractual**
   Liability assumed under any contract or agreement. But this exclusion does not apply to liability for damages:
   **a.** Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or
   **b.** That the "insured" would have in the absence of the contract or agreement.
   **3. Workers' Compensation**
   Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.
   **4. Employee Indemnification And Employer's Liability**
   "Bodily injury" to:
   **a.** An "employee" of the "insured" arising out of and in the course of:
     **(1)** Employment by the "insured"; or

**(2)** Performing the duties related to the conduct of the "insured's" business; or

**b.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** above.

This exclusion applies:

**(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Fellow Employee**

"Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.

**6. Care, Custody Or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**7. Handling Of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

**a.** Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

**b.** After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

**8. Movement Of Property By Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

**9. Operations**

"Bodily injury" or "property damage" arising out of the operation of:

**a.** Any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment"; or

**b.** Machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

**10. Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraph **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

**(1)** When all of the work called for in your contract has been completed.

**(2)** When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

**(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. Pollution**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(2)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**12. War**

"Bodily injury" or "property damage" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

**C. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage Endorsement, Uninsured Motorists Coverage Endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

**SECTION III . PHYSICAL DAMAGE COVERAGE**

**A. Coverage**

**1.** We will pay for "loss" to a covered "auto" or its equipment under:

**a. Comprehensive Coverage**

From any cause except:

**(1)** The covered "auto's" collision with another object; or

**(2)** The covered "auto's" overturn.

**b. Specified Causes Of Loss Coverage**

Caused by:

**(1)** Fire, lightning or explosion;

**(2)** Theft;

**(3)** Windstorm, hail or earthquake;

**(4)** Flood;

**(5)** Mischief or vandalism; or

**(6)** The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

© ISO Properties, Inc., 2005

**c. Collision Coverage**
Caused by:
**(1)** The covered "auto's" collision with another object; or
**(2)** The covered "auto's" overturn.

**2. Towing**
We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

**3. Glass Breakage . Hitting A Bird Or Animal . Falling Objects Or Missiles**
If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:
**a.** Glass breakage;
**b.** "Loss" caused by hitting a bird or animal; and
**c.** "Loss" caused by falling objects or missiles.
However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

**4. Coverage Extensions**
**a. Transportation Expenses**
We will pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

**b. Loss Of Use Expenses**
For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver, under a written rental contract or agreement. We will pay for loss of use expenses if caused by:
**(1)** Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for any covered "auto";

**(2)** Specified Causes Of Loss only if the Declarations indicate that Specified Causes Of Loss Coverage is provided for any covered "auto"; or
**(3)** Collision only if the Declarations indicate that Collision Coverage is provided for any covered "auto".
However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

**B. Exclusions**
**1.** We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".
**a. Nuclear Hazard**
**(1)** The explosion of any weapon employing atomic fission or fusion; or
**(2)** Nuclear reaction or radiation, or radioactive contamination, however caused.
**b. War Or Military Action**
**(1)** War, including undeclared or civil war;
**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or
**(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.
**2.** We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.
**3.** We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:
**a.** Wear and tear, freezing, mechanical or electrical breakdown.
**b.** Blowouts, punctures or other road damage to tires.
**4.** We will not pay for "loss" to any of the following:
**a.** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

© ISO Properties, Inc., 2005

**b.** Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment.

**c.** Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

**d.** Any accessories used with the electronic equipment described in Paragraph **c.** above.

Exclusions **4.c.** and **4.d.** do not apply to:

**a.** Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in the covered "auto" at the time of the "loss" or such equipment is removable from a housing unit which is permanently installed in the covered "auto" at the time of the "loss", and such equipment is designed to be solely operated by use of the power from the "auto's" electrical system, in or upon the covered "auto"; or

**b.** Any other electronic equipment that is:

   **(1)** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system; or

   **(2)** An integral part of the same unit housing any sound reproducing equipment described in Paragraph **a.** above and permanently installed in the opening of the dash or console of the covered "auto" normally used by the manufacturer for installation of a radio.

**5.** We will not pay for "loss" to a covered "auto" due to "diminution in value".

**C. Limit Of Insurance**

**1.** The most we will pay for "loss" in any one "accident" is the lesser of:

**a.** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

**b.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

**2.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**3.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

**SECTION IV . BUSINESS AUTO CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

**1. Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full  compliance with the following duties:

**a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

   **(1)** How, when and where the "accident" or "loss" occurred;

   **(2)** The "insured's" name and address; and

   **(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.** Additionally, you and any other involved "insured" must:

   **(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

**c.** If there is "loss" to a covered "auto" or its equipment you must also do the following:

**(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

**(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

**(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

**a.** There has been full compliance with all the terms of this Coverage Form; and

**b.** Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

**4. Loss Payment . Physical Damage Coverages**

At our option we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B. General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

**2. Concealment, Misrepresentation Or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

**a.** This Coverage Form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this Coverage Form.

**3. Liberalization**

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

**4. No Benefit To Bailee . Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

**5. Other Insurance**

**a.** For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is:

**(1)** Excess while it is connected to a motor vehicle you do not own.

**(2)** Primary while it is connected to a covered auto" you own.

**b.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

**c.** Regardless of the provisions of Paragraph **a.** above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract".

**d.** When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**6. Premium Audit**

**a.** The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

**b.** If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

**7. Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

The coverage territory is:

**a.** The United States of America;

**b.** The territories and possessions of the United States of America;

**c.** Puerto Rico;

**d.** Canada; and

**e.** Anywhere in the world if:

**(1)** A covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less; and

**(2)** The "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico, or Canada or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two Or More Coverage Forms Or Policies Issued By Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

**SECTION V . DEFINITIONS**

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means:

**1.** A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

**2.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

**1.** Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**2.** Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured";

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured.

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraph **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(2)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

**F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**G.** "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**H.** "Insured contract" means:

**1.** A lease of premises;

**2.** A sidetrack agreement;

**3.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

4. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

5. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

6. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

a. That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing; or

b. That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

c. That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

I. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

J. "Loss" means direct and accidental loss or damage.

K. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

a. Power cranes, shovels, loaders, diggers or drills; or

b. Road construction or resurfacing equipment such as graders, scrapers or rollers.

5. Vehicles not described in Paragraph **1.**, **2.**, **3.**, or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

b. Cherry pickers and similar devices used to raise or lower workers.

6. Vehicles not described in Paragraph **1.**, **2.**, **3.** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

a. Equipment designed primarily for:

(1) Snow removal;

(2) Road maintenance, but not construction or resurfacing; or

(3) Street cleaning;

b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

L. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

M. "Property damage" means damage to or loss of use of tangible property.

**N.** "Suit" means a civil proceeding in which:

    **1.** Damages because of "bodily injury" or "property damage"; or

    **2.** A "covered pollution cost or expense", to which this insurance applies, are alleged. "Suit" includes:

        **a.** An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

        **b.** Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

**O.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**P.** "Trailer" includes semitrailer.

COMMERCIAL AUTO
CA 01 96 03 06

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES

For a covered "auto" licensed or principally garaged in Texas, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Physical Damage Coverage**

1. The following exclusion is added to Paragraph **B. Exclusions** in the **Physical Damage Coverage** Section:

   We will not pay for "loss" due to or as a consequence of a seizure of a covered "auto" by federal or state law enforcement officers as evidence in a case against you under the Texas Controlled Substances Act or the federal Controlled Substances Act if you are convicted in such case.

2. Paragraphs **C.2.** and **C.3.** of the Limit Of Insurance Provision under **Physical Damage Coverage** do not apply.

3. Paragraph **D. Deductible** in the **Physical Damage Coverage** Section is amended by the addition of the following:

   At the mutual agreement of you and us, we will not apply the deductible to "loss" to glass, if the glass is repaired rather than replaced.

**B. Changes In Conditions**

The following Condition is added:

**CLAIM HANDLING PROCEDURES**

1. Within 15 days after we receive written notice of claim, we will:

   **a.** Acknowledge receipt of the claim. If we do not acknowledge receipt of the claim in writing, we will keep a record of the date, method and content of the acknowledgment;

   **b.** Begin any investigation of the claim; and

   **c.** Specify the information you must provide in accordance with Paragraph **b.** of the Duties Condition.

We may request more information at a later date, if during the investigation of the claim such additional information is necessary.

2. After we receive the information we request, we will notify you in writing as to whether:

   **a.** The claim will be paid;

   **b.** The claim has been denied, and inform you of the reasons for denial;

   **c.** More information is necessary; or

   **d.** We need additional time to reach a decision. If we need additional time, we will inform you of the reasons for such need.

We will provide notification, as described in **2.a** through **2.d.** above, within:

   **a.** 15 "business days"; or

   **b.** 30 days if we have reason to believe the loss resulted from arson.

If we have notified you that we need additional time to reach a decision, we must then either approve or deny the claim within 45 days of such notice.

3. If a claim results from a weather related catastrophe or a major natural disaster as defined by the Texas Department of Insurance, the claim handling deadlines described above are extended for an additional 15 days.

4. If we notify you that we will pay your claim, or part of your claim, we will pay within 5 "business days" after we notify you.

   However, if payment of the claim or part of the claim is conditioned on your compliance with any of the terms under this policy, we will make payment within 5 "business days" after the date you have complied with such terms.

  © ISO Properties, Inc., 2005   □

**5.** We will notify you in writing of:

    **a.** An initial offer to compromise or settle a claim made or "suit" brought against any insured under the Liability Coverage Section of this policy. The notice will be given no later than the 10th day after the date on which the offer is made.

    **b.** Any settlement of a claim made or "suit" brought against the "insured" under the Liability Coverage Section of this policy. The notice will be given not later than the 30th day after the date of settlement.

As used in this Condition, business day means a day other than Saturday, Sunday or a holiday recognized by the state of Texas.

**C. Changes In Uninsured/Underinsured Motorists Coverage**

All references to "Uninsured Motorists Coverage" in the title or text of any coverage form or endorsement thereto are changed to read "Uninsured/Underinsured Motorists Coverage".

**D. Changes In Trailer Interchange Coverage**

The following exclusion is added to Paragraph **B.1. Exclusions** of **Section III – Trailer Interchange Coverage** in the Motor Carrier and Truckers Coverage Forms:

We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss":

**TEXAS CONTROLLED SUBSTANCE ACT**

We will not pay for "loss" due to or as a consequence of a seizure of a covered "auto" by federal or state law enforcement officers as evidence in a case against you under the Texas Controlled Substances Act or the federal Controlled Substances Act if you are convicted in such case.

© ISO Properties, Inc., 2005

**CA 01 96 03 06**   ☐

COMMERCIAL AUTO
CA 02 43 03 01

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES – CANCELLATION
# AND NONRENEWAL

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM**
**GARAGE COVERAGE FORM**
**MOTOR CARRIER COVERAGE FORM**
**TRUCKERS COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** Paragraphs 2. and 5. of the Cancellation Common Policy Condition contained in Endorsement IL 00 17 are replaced by   the following:

  **2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least 10 days before the effective date of cancellation.

  The permissible reasons for cancellation are as follows:

   **a.** If this policy has been in effect for 60 days or less, we may cancel for any reason except, that under the provisions of the Texas Insurance Code, we may not cancel this policy solely because the policyholder is an elected official.

   **b.** If this policy has been in effect for more than 60 days, or if it is a renewal or continuation of a policy issued by us, we may cancel only for one or more of the following reasons:

    **(1)** Fraud in obtaining coverage;

    **(2)** Failure to pay premiums when due;

    **(3)** An increase in hazard within the control of the insured which would produce an increase in rate;

    **(4)** Loss of reinsurance covering all or part of the risk covered by the policy; or

    **(5)** If we have been placed in supervision, conservatorship or receivership and the cancellation is approved or directed by the supervisor, conservator or receiver.

  **5.** If this policy is canceled, we will send the first Named Insured any premium refund due. The refund will be pro rata, subject to the policy minimum premium. The cancellation will be effective even if we have not made or offered a refund.

**B.** The following Condition is added:

  **1. Nonrenewal**

   **(a)** We may elect to renew this policy except that under the provisions of the Texas Insurance Code, we may not refuse to renew this policy solely because the policyholder is an elected official.

   **(b)** If we elect not to renew this policy, we may do so by mailing or delivering to the first Named Insured, at the last mailing address known to us, written notice of nonrenewal, stating the reason for nonrenewal, at least 60 days before the expiration date. If notice is mailed or delivered less than 60 days before the expiration date, this policy will remain in effect until the 61st day after the date on which the notice is mailed or delivered. Earned premium for any period of coverage that extends beyond the expiration date will be computed pro rata based on the previous year's premium.

CA 02 43 03 01

© ISO Properties, Inc., 2000

POLICY NUMBER: A42520472

**COMMERCIAL AUTO**
**CA 20 15 12 04**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MOBILE EQUIPMENT

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective: 2/4/2020 | Countersigned By: |
|---|---|
| Named Insured:<br><br>HILLSIDE LOGISTICS CO LLC | <br>(Authorized Representative) |

**SCHEDULE**

| Coverages | Covered "Auto" Vehicle Numbers | Limit Of Insurance | Premium |
|---|---|---|---|
| Liability | SEE DEC | $ SEE DEC          Each "Accident" | $ SEE DEC |
| Auto Medical Payments | SEE DEC | $ SEE DEC          Each Person | $ SEE DEC |
| Personal Injury Protection or Equivalent No-Fault Coverage | SEE DEC | Separately Stated in Each P.I.P. Endorsement | $ SEE DEC |
| Uninsured Motorists | | $ SEE DEC          Each "Accident" | $ SEE DEC |
| Underinsured Motorists (Indicate Only When Coverage Is Not Included in Uninsured Motorists Coverage) | | $ SEE DEC          Each "Accident" | $ SEE DEC |
| Comprehensive | SEE DEC | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $ DED. FOR EACH COVERED AUTO, BUT NO DEDUCTIBLE APPLIES TO LOSS CAUSED BY FIRE OR LIGHTNING | $ SEE DEC |
| Collision | SEE DEC | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $ DED. FOR EACH COVERED AUTO | $ SEE DEC |

| Specified Causes of Loss | SEE DEC | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $ DED. FOR EACH COVERED AUTO FOR LOSS CAUSED BY MISCHIEF OR VANDALISM | $  SEE DEC |
|---|---|---|---|

| Vehicle No. | Description Of Vehicles That Are Covered "Autos" |
|---|---|
| SEE DEC | SEE DEC |
|  |  |
|  |  |
|  |  |
|  |  |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||

**A.** This endorsement provides only those coverages where a premium is shown in the Schedule. Each of these coverages applies only to the vehicles shown as covered "autos".

**B.** The vehicles described in the Schedule will be considered covered "autos" and not "mobile equipment".

**C.** Liability Coverage does not apply to "bodily injury", "property damage" or "covered pollution cost or expense" resulting from the operation of any machinery or equipment that is on, attached to or part of any of these vehicles.

          © ISO Properties, Inc., 2004          **CA 20 15 12 04**          □

IL 00 03 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

      CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
      COMMERCIAL AUTOMOBILE COVERAGE PART
      COMMERCIAL GENERAL LIABILITY COVERAGE PART
      COMMERCIAL INLAND MARINE COVERAGE PART
      COMMERCIAL PROPERTY COVERAGE PART
      CRIME AND FIDELITY COVERAGE PART
      EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
      EQUIPMENT BREAKDOWN COVERAGE PART
      FARM COVERAGE PART
      LIQUOR LIABILITY COVERAGE PART
      MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
      OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
      POLLUTION LIABILITY COVERAGE PART
      PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
      RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**4.** Notice of  cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may  be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance  afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

**1.** We have the right to:

**a.** Make inspections and surveys at any time;

**b.** Give you reports on the conditions we find; and

**c.** Recommend changes.

**2.** We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

**a.** Are safe or healthful; or

**b.** Comply with laws, regulations, codes or standards.

**3.** Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**4.** Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

**1.** Is responsible for the payment of all premiums; and

**2.** Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the  scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc.,1998

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

 © ISO Properties, Inc., 2007

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

 © ISO Properties, Inc., 2007

**COMMERCIAL AUTO**

**CA 23 36 11 01**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TEXAS FORM F-1 – UNIFORM COMMERCIAL MOTOR VEHICLE BODILY INJURY AND PROPERTY DAMAGE LIABILITY INSURANCE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

It is agreed that the certification of the policy, as proof of financial responsibility under the provisions of law or regulations promulgated by the Texas Department of Transportation, amends the policy to provide insurance for "auto" "bodily injury" and "property damage" liability in accordance with the provisions of such law or regulations to the extent of coverage and limits certified, provided only that the "insured" agrees to reimburse us for any payment made by us which it would not have been obligated to make under the terms of this policy except by reason of the obligation assumed in making such certification.

This endorsement may not be canceled without cancellation of the policy to which it is attached. Such cancellation may be effected by us or the insured by giving thirty (30) days' notice in writing to the Texas Department of Transportation, such thirty (30) days' notice to commence to run from the date the notice is actually received in the office of such commission.

**CA 23 36 11 01**

© **ISO Properties, Inc., 2001**

Form Approved
OMB No. 2125-0074

# ENDORSEMENT FOR
## MOTOR CARRIER POLICIES OF INSURANCE FOR PUBLIC LIABILITY
## UNDER SECTIONS 29 AND 30 OF THE MOTOR CARRIER ACT OF 1980

Issued to    HILLSIDE LOGISTICS CO LLC

Dated at    San Antonio TX                    this    4        day of    February,    2020

Amending Policy No.    A42520472        Effective Date    2/4/2020

Name of Insurance Company    Hallmark County Mutual Insurance Co.

Telephone Number _____    Countersigned by _____

The policy to which this endorsement is attached provides primary or excess insurance, as indicated by " [ X ] ", for the limits shown:

[X]  This insurance is primary and the company shall not be liable for amounts in excess of $ 750,000       for each accident.

[ ]  This insurance is excess and the company shall not be liable for amounts in excess of $_____ for each accident.
     In excess of the underlying limit of $_____ for each accident.

Whenever required by the Federal Highway Administration (FHWA) or the Interstate Commerce commission (ICC), the company agrees to furnish the FHWA or the ICC a duplicate of said policy and all its endorsements. The company also agrees, upon telephone request by an authorized representative of the FHWA or the ICC, to verify that the policy is in force as of particular date.

Cancellation of this endorsement may be effected by the company or the insured by giving(1) thirty-five (35) days notice in writing to the other party (said 35 days notice to commence from the date the notice is mailed, proof of mailing shall be sufficient proof of notice), and (2) if the insured is subject to the ICC's jurisdiction, by providing thirty (30) days notice to the ICC (said 30 days notice to commence from the date the notice is received by the ICC at its office in Washington, D.C.).

## DEFINITIONS AS USED IN THIS ENDORSEMENT

**ACCIDENT** includes continuous or repeated exposure to conditions which results in bodily injury, property damage, or environmental damage which the insured neither expected nor intended.

**MOTOR VEHICLE** means a land vehicle, machine, truck, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway for transporting property, or any combination thereof.

**BODILY INJURY** means injury to the body, sickness, or disease to any person, including death resulting from any of these.

**ENVIRONMENTAL RESTORATION** means restitution for the loss

damage, or destruction of natural resources arising out of the accidental discharge, dispersal, release or escape into or upon the land, atmosphere, watercourse, or body of water, of any commodity transported by a motor carrier. This shall include the cost of removal and the cost of necessary measures taken to minimize or mitigate damage to human health, the natural environment, fish, shellfish, and wildlife.

**PROPERTY DAMAGE** means damage to or loss of use of tangible property.

**PUBLIC LIABILITY** means liability for bodily injury, property damage, and environmental restoration.

The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier or property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Highway Administration (FHWA) and the Interstate Commerce Commission (ICC).

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere.  Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, relieve the company

from liability or from the payment of any final judgment, within the limits of liability herein described irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as described herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.

The limits of the company's liability for the amounts prescribed in this endorsement apply separately, to each accident, and any payment under the policy because of any one accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident.

The Motor Carrier Act of 1980 requires limits of financial responsibility according to the type of carriage and commodity transported by the motor carrier.  It is the MOTOR CARRIER'S obligation to obtain the required limits of financial responsibility.  THE SCHEDULE OF LIMITS SHOWN ON THE REVERSE SIDE DOES NOT PROVIDE COVERAGE.  The limits shown in the schedule are for information purposes only.

**(Over)**

Form MCS-90

**SCHEDULE OF LIMITS**

**PUBLIC LIABILITY**

| Type of Carriage | Commodity Transported | Minimum Insurance |
|---|---|---|
| (1) For- hire (In interstate or foreign commerce). | Property (nonhazardous). | $   750,000 |
| (2) For-hire and Private (In interstate, foreign, or intrastate commerce). | Hazardous substances, as defined in 49 CFR 171.8, transported in cargo tanks, portable tanks, or hopper-type vehicles with capacities in excess of 3,500 water gallons; or in bulk Class A or B explosives, poision gas (Poison A), liquefied compressed gas or compressed gas, or highway route controlled quantity radioactive materials as defined in 49 CFR 173.403. | 5,000,000 |
| (3) For-hire and Private (In interstate or foreign commerce: in any quantity) or (in intrastate commerce: in bulk only). | Oil listed in 49 CFR 172.101, hazardous waste, hazardous materials and hazardous substances defined in 49 CFR 171.8 and listed in 49 CFR 172.101, but not mentioned in (2) above or (4) below. | 1,000,000 |
| 4) For-hire and Private (In interstate or foreign commerce). | Any quantity of Class A or B explowives, any quantity of poison gas (Poison A), or highway route controlled quantity radioactive materials as defined in 49 CFR 173.403. | 5,000,000 |

Note:  The type of carriage listed under (1), (2), and (3) applies to vehicles with a gross vehicle weight rating of 10,000 pounds or more.  The type of carriage listed under number (4) applies to all vehicles with a gross vehicle weight rating of less than 10,000 pounds.

**(Over)**

Form MCS-90